**In re MALIK D.**

**No. 98–236–Appeal.**

Supreme Court of Rhode Island.

June 11, 1999.

Virginia M. McGinn, Aaron L. Weisman, Providence, for Plaintiff.

Catherine A. Gibran, Paula Rosin, Providence, Megan N. Clingham, Smithfield, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## O P I N I O N

PER CURIAM.

This case comes to us pursuant to an order of this Court directing the respon-

dent, Malik D., to appear and show cause, if any, why the issues raised by him in this appeal should not be summarily decided. He has appeared through counsel but has failed to show cause. Accordingly, we proceed to decide this appeal without further briefing or argument.

I

## Procedural Background

Malik was proceeded against in the Family Court on a petition seeking that he be declared a delinquent child pursuant to G.L.1956 §§ 14-1-5, 14-1-11. That petition, 97-10-155A-F alleged that (A) Malik had unlawfully possessed a controlled substance, namely, crack cocaine, with intent to deliver; (B) he distributed or manufactured the crack cocaine within 300 yards of a school; (C) he possessed the crack cocaine when having available a firearm; (D) he unlawfully possessed a firearm while possessing the crack cocaine with intent to deliver the cocaine; (E) he conspired to violate our state's Uniform Controlled Substances Act; and (F) he obstructed a police officer engaged in the performance of his duty.

Hearing on the petition was held in the Family Court on October 28 and 29, 1997. On November 6, 1997, the Family Court trial justice dismissed the conspiracy charge against Malik (petition E) but proceeded to adjudicate Malik a delinquent on the five remaining petitions. On December, 11, 1997, Malik was sentenced to a three-year term for all five petition charges. He was ordered to serve fourteen months of that sentence at the Rhode Island Training School and the balance of twenty-two months was suspended with probation. He was also ordered, upon his release, to perform 200 hours of community service.

II

## Factual Background

In October of 1997, members of the Special Investigation Bureau of the Provi-

dence Police suspected that a small apartment, "# 5," in a building located at 79 Ridge Street in the city of Providence, was being used to prepare and sell various controlled substances. On October 2, 1997, the police, with the assistance of an informant, were able to make a prearranged purchase of crack cocaine at the apartment. The police were also informed that the person dealing drugs from the apartment was a black male known as "Sugar Bear." Armed with that information, a search warrant and a battering ram, five members of the Special Investigation Bureau responded to apartment # 5 at 79 Ridge Street. After announcing their presence and banging on the door, they received neither response nor welcome. However, the police were able to detect the sound of movement and footsteps coming from inside the apartment. The police believed that whoever was in the apartment was attempting to flee or destroy evidence, or perhaps was afflicted with severe auditory dysfunction and was not able to hear the loud police announcements and door banging. Consequently, the battering ram proceeded through the door, quickly followed by the five police officers. Once inside the small apartment, the police discovered four adults and a seventeen-year-old juvenile who identified himself at first as Michael Greene, but who later admitted to be Malik, the respondent. One of the four apparently hearing-impaired adults was also an apparent short-distance track star. At the starting sound of the battering ram, he bolted from the kitchen into a bathroom, vaulted out a window and streaked down a fire escape. At the finish line at the bottom of the fire escape, he fell into the welcoming arms of several waiting policemen.

Meanwhile, back at the apartment, Sugar Bear was nowhere to be found. However, a police officer quickly spotted two of his young cubs in a small eight foot by eight foot bedroom, hurriedly carrying and pushing a small safe toward a closet in Sugar Bear's den, intending to conceal it

from the uninvited view of the visiting police officers. In their haste, however, the two cubs dropped the safe. The safe's door opened, and lay bare (homonym intended) a veritable hotchpotch of interesting items, none of which resembled honeycombs that might have been taken from a bee's nest, but instead, bags of crack cocaine, a digital scale, three razor blades and numerous small-size Ziploc baggies. Found within several feet of the two safe carriers was a handgun, a pager and a twelve-gauge shotgun. The shotgun was found in the closet where the two safe carriers intended to hide the safe. The police ordered the two safe carriers to lie on the floor where they were each handcuffed and searched. One of the ill-fated safe carriers happened to be the respondent, Malik, alias "Michael Greene." In his pockets the police found several hundred dollars in cash, a key for the deadlock on the apartment door, and a court summons for a "Michael Greene". A pager was found on the other ill-fated safe carrier.

Malik, a New York resident, claims that he was just visiting his cousin in Rhode Island and had no inkling of what might have been going on in the apartment. In his appeal, he asserts: (1) that the state's evidence at his trial was insufficient to establish his joint constructive possession of the crack cocaine found in the safe that he and his fellow safe carrier were allegedly attempting to conceal; (2) the trial justice erred in refusing to dismiss the charge against him of possessing a shotgun while committing a crime of violence; (3) his adjudications of delinquency on two charges, one of committing a crime of violence while having available a firearm and the other of possessing a firearm while possessing a controlled substance, violated his constitutional protection from double jeopardy; and finally, (4) there was insufficient evidence to prove that he had manufactured cocaine within 300 yards of a public or private school.

■ In our consideration of those issues, we are required to review the record before us and to determine therefrom whether legally competent evidence exists therein to support the findings made by the Family Court trial justice. In the course of that review, we give great weight to those findings and to the decision made thereon. A trial justice's finding will not be disturbed by this Court unless incorrect as a matter of law or otherwise clearly wrong. *See In re Antonio G.*, 659 A.2d 672, 673 (R.I.1995) (per curiam); *In re Paul M.*, 626 A.2d 694, 695 (R.I.1993) (per curiam) (citing *In re Susan*, 122 R.I. 677, 411 A.2d 296 (1980)). The issues raised by Malik in his appeal will be dealt with in the order in which they are presented in his prebriefing statement.

## III

### The Possession

■ Malik claims that the evidence before the hearing justice was insufficient to support proof of his possession of the cocaine beyond a reasonable doubt. *In re Michael*, 423 A.2d 1180, 1183 (R.I.1981). We disagree. Possession of the cocaine, however fleeting and temporary by Malik, was sufficient to prove the charge if he was aware of the nature of what he possessed. *See State v. Monroe*, 714 A.2d 620, 621 (R.I.1998); *State v. Gilman*, 110 R.I. 207, 291 A.2d 425 (1972). Malik's possession, joint or otherwise, was established by the eyewitness testimony of the police officer who observed Malik and his slippery-fingered cohort carrying the safe and dropping it, causing the cocaine and the incidental drug implements used to sort, package and weigh the cocaine to be exposed. Malik's knowledge of the cocaine contained in the safe that he was attempting to conceal could certainly be inferred from his actions in the small eight foot by eight foot bedroom when the police entered the apartment. Absent any knowledge of the safe's contents, there would have been no plausible reason for him to attempt to conceal the safe from the police, nor to attempt to conceal his true identity

from the police by the use of a false name. The safe, the guns, the pager, the cash money, the recent sale of cocaine to an informant in the apartment, as well as his possession of a key to the apartment, all speak louder than Malik's feeble protestation of innocence. The trial justice, viewing the totality of the circumstances presented to him by the trial evidence, was certainly justified in drawing reasonable inferences of Malik's guilt beyond a reasonable doubt. *State v. Hernandez,* 641 A.2d 62, 70 (R.I.1994); *State v. Mercado,* 635 A.2d 260 (R.I.1993).[1]

Malik's feigned ignorance of the cocaine, in light of his actions observed in the apartment, is of little assistance to him now. *State v. Colbert,* 549 A.2d 1021 (R.I. 1988).

## IV

### The Shotgun

■ Malik claims that the shotgun, found by the officers in the very closet into which Malik and his safe-carrying friend were intending to conceal the safe, was not immediately available to him and thus the charge of possession of the shotgun should have been dismissed. Malik contends that "common sense dictates that the clothing [in the closet] would have hidden the gun from view." The officers who testified, however, stated that the shotgun was readily visible to them because all of the clothing in the closet was hanging well above the shotgun. In any event, whether the shotgun was visible or not is not the real consideration. The real consideration is whether Malik, who was carrying and dropping the safe, was aware that a shotgun was some two or three feet away from him and was readily available for his use. The trial justice, we believe, correctly con-

cluded that Malik knew of the shotgun's existence and that it was within his immediate reach and control at the threshold of the closet. *See State v. Reyes,* 671 A.2d 1236, 1238 (R.I.1996).

## V

### Double Jeopardy

Malik's final contention raised in this appeal is that he was charged with and adjudicated a delinquent on two charges (C and D) that were based upon the same act and transaction and each of which required proof of the same two elements, thus violating the double jeopardy prohibition (Amendments Five and Fourteen) of the United States Constitution and article 1, section 7, of the Rhode Island Constitution.

The state, in its prebriefing memorandum, had asserted that Malik failed to raise in the Family Court proceedings the double jeopardy contention that he now raises in this appeal and thus, it is not properly before us. *State v. Reis,* 430 A.2d 749, 754 (R.I.1981).

At oral argument, however, the state's attorney (other than who had authored the state's prebriefing memorandum) conceded to us that the double jeopardy contention had in fact been raised in the Family Court. While we question whether the record truly supports the state's appellate concession, we nonetheless accept it. We will proceed to consider the double jeopardy issue with regard to the state's charges C and D.

The two charges, the first, C, based upon Malik's possession of the cocaine found in the safe while having available the shotgun in the closet (G.L.1956 § 11–47–8(c)) and the other, D, for possessing that same shotgun while committing a crime of

1. As to Malik's assertion that there was insufficient evidence to establish that he had intended to distribute or manufacture the cocaine within 300 yards of a school, as proscribed by G.L.1956 § 21–28–4.07.1, that assertion overlooks the statute's definition of "manufacture" which includes any packag-

ing or repackaging of the cocaine. Section § 21–28–1.02(20). The small Ziploc bags, the scale and razor blades, all found with the cocaine, permitted the hearing justice to conclude that the cocaine was intended to be packaged, and after once being packaged, would be sold and distributed.

violence—being in possession of the same cocaine (§ 11–47–3), invoked the double jeopardy prohibition.

██ While it is settled doctrine that a person may be charged with several crimes all committed as part of a single incident, in "determining when a single act may violate two separate statutes or constitute two distinct crimes, the test has traditionally been whether each offense requires proof of a fact that the other does not." *State v. Lemon,* 497 A.2d 713, 719 (R.I.1985) (citing *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)). In this case, the same shotgun and the possession of the same cocaine served as the basis for the two charges.

Accordingly, rather than to remand this case to the Family Court with directions to that Court to dismiss one of the two charges, we will vacate Malik's delinquency adjudication on the state's proof pertaining to § 11–47–3, and permit his adjudication of delinquency on § 11–47–8(c) to remain. In so doing, Malik is in no way prejudiced or punished because his three-year sentence remains exactly the same as when originally imposed on and for each of the remaining four charges.

Accordingly, and for the reasons set out above, the respondent Malik's appeal is in all respects denied, except that his appeal as to the state's charge based on § 11–47–3, which we sustain. The judgment is affirmed in part and vacated in part. The papers in this case are remanded to the Family Court.