In re RYAN B.

No. 97–153–Appeal.

Supreme Court of Rhode Island.

Oct. 27, 1999.

Virginia M. McGinn, Aaron L. Weisman, Jane M. McSoley, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This appeal concerns the sufficiency of evidence to support a Family Court's adjudication of first-degree child-molestation sexual assault. After a hearing, a trial justice ruled that the sixteen-year-old juvenile respondent, Ryan B. (Ryan), was delinquent and in violation of his probation. The court found that the respondent had caused two young girls, Kathy (born July 31, 1990) and her half-sister, Sally (born September 13, 1991),[1] to engage in acts of fellatio with him. Because we conclude that legally competent evidence exists to support the Family Court's findings, we affirm the judgments in question.

Initially the parties came before this Court pursuant to an order to show cause why we should not decide respondent's appeal summarily. In an unpublished order entered on February 19, 1999, we concluded that the trial justice did not err in finding Kathy competent to testify concerning the allegations of first-degree child-molestation sexual assault. *See In re Ryan B.*, No. 97–153–A (R.I., filed February 19, 1999)(mem.). Also we held that the trial justice did not err in admitting into evidence the out-of-court statements made by Kathy to her foster mother and to the investigating officer shortly after the alleged sexual assault occurred. *Id.* In that order, however, we determined that cause had been shown with respect to one issue raised in the appeal. As a re-sult, we reassigned this case to our regular argument calendar and specifically directed the parties to address whether the evidence of first-degree child-molestation sexual assault was sufficient as a matter of law and fact to prove respondent's alleged delinquency.

### Facts and Travel

In August 1996 the Rhode Island Department of Children Youth and Families (DCYF) filed two Family Court petitions against respondent, in which DCYF alleged him to be delinquent for committing first-degree child-molestation sexual assault upon Kathy and Sally in violation of G.L.1956 § 11–37–8.1. Thereafter, DCYF filed two more Family Court petitions against respondent, alleging that by reason of this same conduct, he had violated the conditions of his probation on a previous delinquency petition. That petition charged that respondent was delinquent for stealing a diamond ring valued at $2700 from a residence, an act constituting larceny over $500. *See* G.L.1956 §§ 11–41–1 and 11–41–5. The Family Court in that earlier case (filed in February 1996) determined that respondent was delinquent and committed him to the custody of the Rhode Island Training School for Youth for a period of six months (suspended) and placed him on probation for one year.

A consolidated hearing on these petitions convened in September and October 1996 before a Family Court justice. First, the trial justice questioned Kathy regarding her competency to testify. Following that in-camera voir dire, he ruled that Kathy was a competent witness because he was satisfied that she knew the difference between telling a lie and testifying to the truth.

The trial testimony centered on an incident that occurred in May 1996. Kathy, who was six years old at the time of the trial, testified that she and her sister were in her brother's bedroom with respondent

---

1. To protect their true identities, the girls' names used in this opinion are fictitious.

on the day in question. Her mother was not home, and her father was sleeping. The three of them were on the bed with the door closed. When asked whether anything happened on the bed, at first she said, "No." The prosecutor then showed Kathy a lollipop to refresh her memory. While eating the lollipop, Kathy testified that everyone on the bed was wearing clothes. However, when she was asked specifically whether Ryan took his clothes off, Kathy said, "He pulled down his pants." When asked a second time if she did anything on the bed, Kathy testified that she "sucked him" (meaning Ryan). When questioned about where, Kathy testified "in the front." She also explained that Ryan had referred to what she had sucked as "a penis." After asking Kathy how she had "sucked him," the prosecutor described for the record Kathy's response: she "closed her lips, put them in a pouting motion and exhaled." Kathy also testified that her sister "sucked on it and bit it" (referring to Ryan's penis), and she also stated that Ryan said, "Ow!" Kathy testified initially that she did not see Sally bite Ryan, but when pressed, she testified that she did see Sally bite him. Later, upon cross-examination, Kathy testified that it was a different person—not respondent—who was in the bedroom with her. Still later, Kathy testified that it was defendant's penis she saw that day. The trial justice also questioned Kathy's half-sister, Sally, but determined that Sally was not competent to testify.

Bonnie Lemoine (Lemoine), the children's foster mother, testified that on May 21, 1996, she had left the girls at home with her husband, her son Robert, and his friends, Sean and Brian, and respondent, while she drove to a hairdressing appointment. When she returned home, she chauffeured the girls to a doctor's appointment, and in the car the girls told her that when they had been in Robert's bedroom with respondent, he had a "lollipop in his bum" and they sucked it. The girls told her that "the lollipop" looked like a circle with a triangle on top, and Sally said it

tasted like "poop." After returning home from the doctor's appointment, the girls repeated what they had told Lemoine to her son Robert. Lemoine explained that she contacted the Coventry police and reported the incident and then brought the girls into the police station the next morning to fill out paperwork. The girls were also examined at the Rhode Island Hospital Child Safety Clinic.

Detective Thomas Watson from the Coventry police department testified that he met with the children on May 22, 1996. He explained that Kathy told him that she had sucked on Ryan's lollipop, in his bum, when Ryan pulled down his pants. He explained further that Kathy correctly identified body parts using an anatomical drawing and she pointed to the penis when asked to identify the "lollipop." Detective Watson also testified that mouth swabs of the girls were negative.

At the close of the state's case respondent moved for judgment of acquittal. The trial justice denied the motion. Ronald Miller, a licensed social worker and psychotherapist, testified that at the request of DCYF, he counseled and evaluated Kathy in May of 1995 for indications of sexual abuse. During her sessions with Ronald Miller, Kathy told him that both her biological father and stepfather had fondled her.

Brian Medeiros, a friend of Robert Lemoine, who also was at the house on the day of the incident, testified that he was playing football outside with Sean and Robert while respondent stayed in Robert's bedroom to play video games. He explained that he went inside when it started to rain, opened Robert's bedroom door, and saw respondent sitting in a rocking chair and the girls on the couch. He described the girls as annoying; he said they would jump on top of people, kissing and squeezing them. Also, he described them as the kind of girls who would "bother" a person the more that person would ask to be left alone.

Janet Freniere, a child-protective investigator employed by DCYF, testified that in August of 1994, she investigated an allegation that Kathy had been sexually molested by her father or her sister's father. She explained that she interviewed Kathy with Lemoine in the room, and Kathy told her that "Daddy Mark touched her between her legs" during a visit. Upon examination, Freniere stated that there was no evidence of abuse.

After hearing the evidence, the trial justice concluded: (1) that Kathy was a competent and credible witness, (2) that respondent had inserted his penis into the mouth of each of the two girls, (3) that insertion constitutes fellatio under the statute, (4) that the state proved that respondent had committed fellatio, (5) that Brian Medeiros's testimony corroborated the fact that respondent was in the bedroom alone with the girls for at least ten minutes on the date in question, (6) that the testimony of two DCYF workers "in no way impugns" Kathy's testimony, (7) that Kathy's testimony was consistent with what she had told Lemoine, Detective Thomas Watson, and Ronald Miller, and (8) that the respondent had caused the two girls to perform fellatio upon him in violation of § 11–37–8.1. The trial justice decided that the state had proved its case beyond a reasonable doubt. An order adjudicating respondent to be delinquent and a probation violator entered in October 1996, and respondent filed a notice of appeal. He was ordered to the Training School and directed to cooperate with sex-offender counseling.

As previously indicated, the only remaining issue before us is the sufficiency of the evidence to support the adjudication in question. The respondent argues that there was no evidence that either child's mouth ever touched Ryan's penis. Also, he contends, Kathy's demonstration did

not indicate a sucking action but rather showed that she blew air out of her mouth. Thus, he asserts, her demonstration indicates a lack of penetration.[2] Furthermore, respondent argues, the evidence indicates that whatever action Kathy supposedly undertook, it was not done at respondent's direction. The state, on the other hand, maintains that Kathy's testimony was consistent and clear. On the basis of her testimony, the state argues, the trial justice properly concluded that penetration occurred in the form of fellatio.

## Analysis

The deferential standard of review we follow when considering an appeal from an adjudication of delinquency is to review the record to determine "whether legally competent evidence exists therein to support the findings made by the Family Court trial justice." *In re Malik D.*, 730 A.2d 1070, 1072 (R.I.1999)(per curiam). We give great weight to the findings and the decision made by the trial justice, and this Court will not disturb such findings unless they are incorrect as a matter of law or otherwise clearly wrong. *Id.*

Section 11–37–8.1 provides,

"A person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under."

Section 11–37–1(8), as amended by P.L. 1986, ch. 191, § 1, defined sexual penetration as follows:

"[S]exual intercourse, cunnilingus, fellatio, and anal intercourse, or any other intrusion, however slight, by any part of a person's body or by any object into the genital or anal openings of another per-

---

2. Fellatio is defined as "obtaining sexual satisfaction by oral stimulation of the penis." Webster's Third New International Dictionary, 836 (1993). Because such oral stimulation does not necessarily require or involve

any act of penetration into another person's body, mere oral contact with the male genitalia for the purpose of sexual gratification can suffice to constitute an act of fellatio.

son's body, but emission of semen is not required." [3]

This Court has decided that a "serious allegation" such as digital penetration requires "precise and specific testimony" to support it and that, therefore, evidence that a perpetrator touched the victim "in the vagina" and "in the breasts" was not sufficient to draw an inference that would justify a finding of digital penetration beyond a reasonable doubt. *See State v. McDonald,* 602 A.2d 923, 925 (R.I.1992) *but cf. State v. Girouard,* 561 A.2d 882, 889 (R.I.1989) (holding that testimony by the victim that the perpetrator "put his penis into her mouth" was sufficient evidence capable of generating proof of guilt beyond a reasonable doubt). However, because the act of fellatio constituted penetration as a matter of law, no specific evidence of penile insertion into the victims' mouths was necessary for this offense to be established under the definition of sexual penetration in the version of § 11–37–1(8) that was in effect when this offense was committed. In any event the record in this case does contain evidence from which an inference of penile insertion into the victims' mouths was properly drawn.

Here, when Kathy was first questioned about what happened in Robert's room on the bed, she replied that nothing had happened. The prosecutor was then allowed to show Kathy a lollipop to refresh her memory. While she ate the lollipop, Kathy testified that respondent had pulled down his pants. At that point the following colloquy ensued:

"Q   Did you touch Ryan?

"Ms. Burns: Objection.

"The Witness: Sucked him.

"The Court: Objection sustained.

"Ms. Burns: Motion to strike.

"The Court: Motion to strike granted.

"Q   [Kathy], did you do anything on the bed?

"A   Sucked him.

"Q   All right.  Him' is who?

"A   Ryan.

"Q   And where did you suck?

"A   On the bed in the * * *

"Q   Right in the * * *

"A   In the front.

"Mr. Sparr:  Let the record reflect when the witness answered she pointed to the front of the body."

Kathy testified that Ryan called what she sucked a "penis." When Kathy was asked to demonstrate what she meant by "suck," she closed her lips, put them in a pouting motion and exhaled. Relying upon this precise and specific testimony, we believe that the evidence was sufficient for the trial justice to infer that Kathy had engaged in an act of fellatio with Ryan after he pulled down his pants and that Ryan intended this act to occur for his own sexual gratification. The basis for our conclusion is that the word "suck" in this context usually connotes some degree of both contact with the object in question and insertion of the object into the person's mouth to perform the activity described by this word. Further, Kathy's gestures when she was asked to demonstrate what she did are not inconsistent with her statement that she "sucked him." The mere fact that Kathy closed her lips, made a pouting motion, and exhaled during her demonstration does not necessarily indicate a lack of the requisite oral contact with the respondent's penis for fellatio to have occurred. Finally, her testimony about her sister's biting the respondent's penis when her turn came—causing him to say "Ow!" in response—is also consistent

---

3. After the incidents of fellatio at issue here had occurred, the definition of sexual penetration in G.L.1956 § 11–37–1(8) was changed by P.L.1996, ch. 204, § 1, to include the following: "sexual intercourse, cunnilingus, fellatio, and anal intercourse, or any other intrusion, however slight, by any part of a person's body or by any object into the genital or anal openings of another person's body, *or the victim's own body upon the accused's instruction,* but emission of semen is not required." (Emphasis added.)

with and highly probative of the fact that the respondent, as the court found, actually inserted his penis into the mouth of Kathy's sister. According (as we must) great weight to the findings of the Family Court, we cannot say that the trial justice was clearly wrong in his conclusion that the evidence was both legally competent and sufficient to establish that acts of fellatio were committed with both girls. Further, after considering the totality of the evidence and all of the circumstances surrounding the commission of these acts, we are satisfied that the evidence was sufficient to permit the trial justice to infer that the acts in question were committed upon the accused's instruction.

## Conclusion

For the reasons set forth above, we deny and dismiss the respondent's appeal and affirm the Family Court's adjudications that the respondent both was delinquent and was a probation violator.