In re ANDREY G.

No. 2000–406–Appeal.

Supreme Court of Rhode Island.

May 9, 2002.

Virginia M. McGinn, Aaron L. Weisman, Providence, for Plaintiff.

Paula Rosin, Melissa Austin Long, Kenneth L. Bond, Providence (respondent), for Defendant.

Present: WILLIAMS, C.J.,
LEDERBERG, BOURCIER,
FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The respondent, Andrey G. (respondent), appeals from a Family Court delinquency determination. The adjudication of delinquency was made after the Family Court hearing justice found that respondent committed first- and second-degree sexual molestation upon a minor, pursuant to G.L.1956 §§ 11–37–8.1 and 11–37–8.3.

This case came before the Court for oral argument on April 9, 2002, pursuant to an order that directed both parties to appear to show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts pertinent to this appeal are as follows.

## I

### Facts and Travel

The delinquency determination arose from the events of April 8, 2000, when respondent, then fifteen years old, was visiting the home of his good friend, Bryan A. (Bryan). Apparently, respondent and Bryan had just returned from playing basketball. Upon arrival at Bryan's house, the two boys settled down in the living room. Bryan's six-year-old sister, Mary,[1] was already in the room, playing with Bar-

bie dolls. Shortly thereafter, Bryan went to the basement to use the computer and left respondent and Mary alone. Approximately two hours later, Mary's father, Gil A. (father) became concerned after Mary came into his room and asked for help buttoning up her pants. According to the father's testimony, he became suspicious when he noticed that Mary's face was "completely flushed" and "her eyes were wide open." The father also became alarmed when he went to the kitchen and saw respondent on the couch, stating, "his face had looked like he had just been doing something he wasn't supposed to be doing." Mary's father immediately told the boys to leave the house and put Mary in the car to drive her to Jamestown, where her mother was visiting friends.

Christine Barron, M.D. (Dr. Barron), a fellow in the Child Protection Program at Hasbro Children's Hospital, testified that she examined Mary on April 9, 2000, after Mary had disclosed sexual abuse to Emergency Department personnel. Doctor Barron testified that she interviewed each member of Mary's family, but left the interview of Mary to be done at the Child Advocacy Center (CAC). Doctor Barron asserted that she did not interview Mary herself because the CAC is specifically trained for such interviews. During the examination, however, Mary did name respondent as her abuser. Doctor Barron explained that she conducted a physical examination of Mary. She testified that Mary's parents had relayed to her that Mary had complained of vaginal pain and asked them to lock the door at night and put out a sign, barring respondent from the house. Moreover, Dr. Barron testified that Mary's parents told her that they noticed behavioral changes in their daughter, including fear during the night.

1. The victim's name has been changed to protect her identity.

Doctor Barron testified that it is unusual for a six-year-old child to experience vaginal pain, but said that the hymen is extremely sensitive and painful if touched. Doctor Barron then indicated that her physical examination did not reveal any cuts or abnormalities of Mary's hymen. According to Dr. Barron, however, 90 percent of hymen exams can appear normal, despite a patient's disclosure of penetration. Finally, Dr. Barron said that it would be very unlikely for a child to touch her own hymen.

Mary, who was found competent to testify, recounted the events of April 8, 2000. Mary said that she was playing with Barbie dolls in the living room when her brother left to use the computer, leaving her alone with respondent. Mary testified that she then retrieved a blanket and joined respondent, who was resting on the couch. Mary said that she put the blanket over herself and respondent, and he told her that he was going to sleep. Mary testified, however, that he remained awake and "put his hand on [her] privates."[2] She further testified that respondent first put his hands on top of her clothing and then unbuttoned her jeans and put his fingers under her clothing. Finally, Mary testified that respondent put his finger "inside of [her] privates" and then "put more fingers in it." Mary stated, "he was keep [*sic*] tapping me, and I didn't like it." Mary stated that after the encounter was over, she slid off the couch, and her father drove her to get her mother.

Mary next testified about the conversation that she had with her father on the way to Jamestown. She said that she told her father "the games were not true, and * * * the body was true, and· he got a little angry at [respondent]." Mary testified that when they reached Jamestown, she also told her mother what had happened.

Later in the trial, Mary's father took the stand. Besides the facts stated above, Mary's father testified that on April 8, 2000, he filed a complaint with the Newport Police Department on behalf of his daughter. He said that at about 4 p.m., he was sleeping in his bedroom, when respondent entered and asked him to play basketball. He testified that he told respondent to wait about twenty minutes, and went back to sleep. After his nap, he went to the basement, spent some time on the internet, and eventually went back to his bedroom. Shortly after he returned to his bedroom, Mary entered with her pants unbuttoned. After ordering the boys to leave the house, he put Mary in the car to get her mother. He then confronted his daughter about what had happened between her and respondent. Mary's father testified that she initially told him that she was playing tick-tack-toe, but when he told her that God wanted her to tell the truth, she told him that respondent touched her "private parts."

The respondent and Bryan also testified at the hearing. The respondent testified that he had never been alone on the couch with Mary, and denied ever having molested her.

After a long hearing, the Family Court justice found that respondent had committed first-and second-degree child molestation and later detained him at the Rhode Island Training School. The respondent filed a timely notice of appeal.

## II

### Standard of Review

■ We previously have held that "[t]he deferential standard of review we follow

---

2. During direct examination, Mary explained that "privates" are used for going to the bathroom.

when considering an appeal from an adjudication of delinquency is to review the record to determine 'whether legally competent evidence exists therein to support the findings made by the Family Court trial justice.'" *In re Ryan B.,* 739 A.2d 232, 235 (R.I.1999) (quoting *In re Malik D.,* 730 A.2d 1070, 1072 (R.I.1999)). Furthermore, "[w]e give great weight to the findings and the decision made by the trial justice, and this Court will not disturb such findings unless they are incorrect as a matter of law or otherwise clearly wrong." *Id.* (citing *In re Malik D.,* 730 A.2d at 1072).

### III

### Hearsay

The respondent first argues that the hearing justice erred by admitting hearsay testimony during the examination of both Mary's father and Dr. Barron. We will address the merits of each part of the argument separately.

First, respondent asserts that the hearing justice erred by allowing Dr. Barron to testify about what she had learned from both Mary and Mary's parents during her evaluation. According to respondent, the hearing justice erred by allowing Dr. Barron's testimony that: (1) Mary had told her that she had been sexually abused by respondent, (2) Mary's parents told her that Mary had complained of vaginal pain, (3) Mary had asked her parents to ban respondent from their house, and (4) Mary's parents had told her they noticed behavioral changes in their daughter and that she was very afraid at night.

Although the hearing justice overruled the objection, she did not clearly state her basis for doing so. However, respondent presumes that the hearing justice ruled pursuant to the medical diagnosis exception.

According to Rule 803(4) of the Rhode Island Rules of Evidence, "[s]tatements made for purposes of medical diagnosis or treatment" are admissible. However, such admissibility "hinge[s] on whether what has been related by the patient will assist or is helpful in the diagnosis or treatment of [the patient's] ailment." *In re Jessica C.,* 690 A.2d 1357, 1363 (R.I.1997) (quoting *State v. Ucero,* 450 A.2d 809, 815 (R.I.1982)). Moreover, "[t]he statements do not have to be made to a physician but could be made to any person * * * even a family member." *Id.* (quoting Advisory Committee's Note to Rule 803 at 1165).

In the instant case, the statements made by Mary's mother, about her daughter's reported vaginal pain were properly admissible under the medical diagnosis exception to the hearsay rule. However, Mary's statement that respondent had sexually abused her is clearly inadmissible because it merely assigned fault rather than assisted Dr. Barron in her medical diagnosis. Similarly, statements about Mary's fear of the night and her request that her parents put a sign on the door are inadmissible. We, however, do not agree that the hearing justice's admission of these statements was reversible error. Instead, it is clear from the transcript that the hearing justice, in reaching her decision, focused on Mary's testimony to determine that respondent had committed the sexual molestation beyond a reasonable doubt. In fact, according to the transcript, the hearing justice never even referred to any of the objectionable statements when she explained the reasoning for her decision.

The respondent also contends that the hearing justice committed reversible error by allowing Mary's father to testify about statements that Mary made to him as they drove to Jamestown to meet

her mother. Specifically, respondent argues that the hearing justice erred by allowing Mary's father to testify that his daughter told him that respondent had touched her "private parts." We disagree.

This Court has previously stated that "the admission of hearsay evidence is not prejudicial when the evidence is merely cumulative and when [respondent's] guilt is sufficiently established by proper evidence." *State v. Micheli,* 656 A.2d 980, 982 (R.I.1995) (citing *State v. Angell,* 122 R.I. 160, 405 A.2d 10 (1979)). In *Micheli,* we held that the trial justice committed only harmless error by allowing a mother's hearsay testimony of a seven-year-old sexual molestation victim because the victim, himself, testified to the same facts. *Id.* at 981–82; *see also State v. Marr,* 731 A.2d 690, 693 (R.I.1999) (concluding that mother's hearsay testimony about what son told her about sexual molestation was harmless error when son also testified to those facts). Finally, we have previously remarked that "[w]e can safely assume that the trial justice, sitting without a jury, [is] capable of disregarding evidence that [s]he would not permit to be introduced." *State v. McKone,* 673 A.2d 1068, 1075 (R.I.1996).

In the instant case, Mary's father testified about the statements his daughter allegedly made to him after she already had testified about the same facts. Moreover, it is clear from the transcript that the hearing justice did not rely on the father's testimony in reaching her decision. Consequently, the father's testimony did not "infect" the hearing justice's decision in finding respondent guilty of first- and second-degree sexual molestation. *See Marr,* 731 A.2d at 693. The hearing justice's finding, therefore, resulted only in harmless error. Thus, we deny respondent's first argument on appeal.

## III

### Uncharged Acts

■■■ The respondent next argues that the trial justice committed reversible error by allowing Mary to testify about other instances in which respondent allegedly sexually abused her that were not the basis for the delinquency hearing. We disagree.

■■■ "Evidence of other crimes or bad acts is usually considered so prejudicial that it is per se inadmissible regardless of any relevancy that it might have to show the propensity of a [respondent] to have committed the charged crime." *State v. Gomes,* 690 A.2d 310, 316 (R.I.1997) (citing *State v. Sepe,* 122 R.I. 560, 565, 410 A.2d 127, 130 (1980)). However, this Court previously has determined that "evidence of other not too remote sex crimes with the particular person concerned in the crime on trial may be introduced to show the accused's 'lewd disposition or * * * intent' towards the person." *Id.* (quoting *State v. Jalette,* 119 R.I. 614, 627, 382 A.2d 526, 533 (1978)). Finally, the "lewd-disposition or intent exception of *Jalette* was extended to cover testimony by the victim concerning uncharged acts in *State v. Cardoza,* 465 A.2d 200, 203 (R.I.1983)." *Gomes,* 690 A.2d at 316. We have cautioned, however, that evidence of uncharged acts should be subject to the following restrictions:

> "First, the evidence should be used sparingly and only when reasonably necessary. *Jalette,* 119 R.I. at 627, 382 A.2d at 533. Other-acts evidence should be excluded if it is merely cumulative. *Id.* Second, the evidence is only to be admitted when the exception is relevant to proving the charges lodged against the [respondent]. *Id.* Finally, a trial court should designate with particularity the specific exception to which the evidence is relevant and instruct the jury

concerning the limited use for which the evidence is to be considered. *Id.* at 627–28, 382 A.2d at 533" *Gomes,* 690 A.2d at 316–17.

In the instant case, statements about prior uncharged acts of sexual molestation of Mary by respondent were cumulative, and thus inadmissible. However, a review of the transcript reveals that the hearing justice, in making a determination of delinquency, specifically stated that "it appears that there was some suggestion that there was some prior misconduct between [respondent] and [Mary]. The [c]ourt wants to make it very clear that it is not making any such finding, based upon the testimony that it had before it." It is clear, therefore, that the hearing justice did not consider other, uncharged acts in making her decision. Consequently, their admission in Mary's testimony was harmless.

## IV

### Sufficiency of the Evidence

■ The respondent finally argues that the trial justice's ruling should be overturned because there was insufficient evidence to establish that there was sexual penetration, a required element of first-degree sexual molestation. *See* § 11–37–8.1. We disagree.

■ To prove first-degree child molestation sexual assault, an individual must engage "in sexual penetration with a person fourteen (14) years of age or under." Section 11–37–8.1. Furthermore, sexual penetration is defined as "any * * * intrusion, however slight, by any part of a person's body or by any object into the genital or anal openings of another person's body." Section 11–37–1(8). This Court, however, previously has held that "a 'serious allegation' such as digital penetration requires 'precise and specific testimony' to support it and that, therefore, evidence that a perpetrator touched the

victim 'in the vagina' * * * was not sufficient to draw an inference that would justify a finding of digital penetration beyond a reasonable doubt." *In re Ryan B.,* 739 A.2d at 236 (quoting *State v. McDonald,* 602 A.2d 923, 925 (R.I.1992)). However, corroboration is not required for a conviction of first- or second-degree child molestation. *See State v. Clark,* 603 A.2d 1094, 1097 (R.I.1992).

The hearing justice discussed the evidence upon which she relied in making her determination that penetration had occurred. The hearing justice stated,

"what was very telling to the [c]ourt was that this young child, while describing what happened to her, took her own hand and cupped her hand and turned it up and showed by her gesturing how [the respondent] had put his hand in her private area; * * * [s]he explained that [the respondent] was tapping her. She said she didn't like it. When she was asked what he was tapping her with, she very clearly said his finger went inside her privates. She proceeded to describe how he then put more of his fingers into her."

The hearing justice found beyond a reasonable doubt that there was the requisite penetration for first-degree sexual molestation. Because our review of the record reveals that there was legally competent evidence to support the findings made by the hearing justice, we will not disturb the ruling of the Family Court.

### Conclusion

Accordingly, the respondent's appeal is denied and dismissed. The judgment of the Family Court is affirmed. The papers of the case are returned to the Family Court.