## In re RICHARD A.

**Nos. 2005–61–Appeal, 2005–284–Appeal.**

Supreme Court of Rhode Island.

May 1, 2008.

Janice M. Weisfeld, Esq., Providence, for Petitioner.

Aaron L. Weisman, Esq., Providence, for Respondent.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

The respondent, Richard A. (Richard or respondent), a juvenile, appeals from an adjudication that he was delinquent for committing second-degree child molestation sexual assault on his nine-year-old cousin. Before the trial justice ordered the respondent to register as a sex offender as a result of the adjudication, the respondent objected to the constitutionality of this requirement because of his juvenile status. After the trial justice rejected the respondent's argument and ruled that the Sexual Offender Registration and Community Notification Act, G.L.1956 chapter 37.1 of title 11 (the Registration Act) was constitutional, the respondent timely appealed. These appeals were consolidated and were presented collectively to this Court.

## I

### Facts and Travel

On September 19, 2003, Rhode Island State Police Officer Douglas Waters was on duty at the Rhode Island State Police barracks in Lincoln when a woman and her daughter arrived. Sandra Carneiro and her nine-year-old daughter, Jennifer,[1] filed a complaint against respondent, Jennifer's fifteen-year-old cousin, Richard, al-

leging sexual assault. The facts underlying this allegation are as follows.

In the summer of 2003, Jennifer was visiting her paternal grandmother's home for a family gathering. The respondent was among those present at the get-together. Later that night, Jennifer, respondent, and another juvenile cousin, Junior, went into Jennifer's grandmother's spare room. Junior turned off the light in the spare room and suggested the threesome watch the red blinking of the fire alarm light "like a movie." They lay on the floor together, with Jennifer in the middle of the two boys. At this point respondent was lying approximately two to three inches away from Jennifer.

After a couple of minutes of lying together in the darkness, respondent put his hand down Jennifer's pants. Jennifer, who was ten years old at the time of trial, testified that respondent's hand "just moved around" inside her "private" for approximately ten seconds. She testified that his hand was on the inside of her underwear and that she knew his hand was inside her "pee pee" because she could feel him. She also told the prosecutor that it hurt. Jennifer testified that while still lying on the floor together, respondent put his hands "in my butt" for approximately five seconds, and that this hurt, as well. Jennifer asked him to stop, but respondent refused.

The respondent then took Jennifer's hand and put it down his pants and inside his underwear. The respondent held her hand and tried to move it. Jennifer testified that she felt his "private" and it was "kind of hard." Jennifer also explained that during this episode respondent touched her breasts under her shirt.

---

1. Jennifer is not the victim's real name.

During this incident, respondent whispered to Jennifer that she could not tell Junior, or anyone else, what he did. The touching finally stopped when Junior left the spare room to go to the bathroom and respondent followed him. After Junior left the room, but just before respondent left, respondent whispered to Jennifer "Don't tell anybody."

Although it is the touching that occurred on a summer night in 2003 that led to the filing of the complaint against respondent in September 2003, that was not the only time respondent had touched Jennifer in a sexual manner. Before that, while Jennifer was staying with her father at his home, respondent had approached Jennifer in her bedroom.[2] He told Jennifer to get on the floor; although she initially refused, respondent insisted and she eventually complied with his demands. While Jennifer lay on the floor and respondent lay alongside her, he put his hand down her pants and underneath her underwear. Jennifer testified that he put his hand inside her "pee pee." He also touched her butt and then squeezed her breasts underneath her shirt. As Jennifer tried to get up, respondent grabbed her arm to "make [her] go back down." Before leaving her room, respondent repeatedly told Jennifer not to tell anyone. When Jennifer told him that she would tell someone if he touched her again, respondent replied, "No, you're not, because then you'll get in trouble." The respondent then left Jennifer's bedroom to watch football downstairs with her father.

Jennifer also recounted a third incident that occurred when she was approximately six years old. Although she did not remember many of the details, she did testify that respondent touched her in a similar manner when she was in her bedroom at her father's house.

On October 31, 2003, the Rhode Island State Police filed two delinquency petitions in the Family Court. The first petition alleged that respondent committed first-degree child molestation sexual assault on his nine-year-old cousin Jennifer, in violation of G.L.1956 § 11–37–8.1.[3] The second petition alleged second-degree child molestation sexual assault on Jennifer, in violation of § 11–37–8.3.[4] That same day, the Family Court issued a no-contact order, restraining respondent from having any contact with Jennifer.

During the trial on these charges, Jennifer testified about all three incidents involving respondent's alleged sexual contact with her. On cross-examination, respondent questioned Jennifer repeatedly about the details of the three incidents, seeking to draw out inconsistencies between Jennifer's testimony during the trial and the previous statements she had made to a representative at the Child Advocacy Center. The following are some of the inconsistencies elicited at trial: (1) Jennifer's age at the time of the chronologically first instance of sexual contact with respondent; (2) whether Jennifer was cleaning her room or watching television when the second instance of sexual contact occurred; (3) whether Jennifer was underneath a blanket during the incident in her grand-

2. Jennifer could not recall exactly when this incident occurred, but it appears to have occurred in 2003, when Jennifer was nine years old.

3. General Laws 1956 § 11–37–8.1 provides: "A person is guilty of first degree child molestation sexual assault if he or she engages in sexual penetration with a person fourteen (14) years of age or under."

4. Section 11–37–8.3 provides: "A person is guilty of a second degree child molestation sexual assault if he or she engages in sexual contact with another person fourteen (14) years of age or under."

mother's spare room; (4) whether respondent whispered to Jennifer not to let Junior know what was happening; and (5) the length of time of the incident in her grandmother's spare room.

The respondent also questioned both Jennifer and her mother about the circumstances leading up to the moment when Jennifer told her mother about respondent's sexual touching. The following facts were elicited at trial. During the first week of September 2003, Jennifer and her younger female cousin, Alex, were at their maternal grandmother's house when their grandmother walked in on Alex with her pants down. Although Jennifer admitted to her mother that she and Alex were engaged in some type of sexual activity, she was reluctant to tell her mother where she had learned that type of sexual behavior because she "[didn't] want to get anybody in trouble." However, her mother continued to question Jennifer, insisting that she must have learned that behavior from someone. Four days later, Jennifer explained to her mother that she had learned that behavior from respondent and that she and Alex were "doing kind of what me and [respondent] were doing."

At the close of the state's case-in-chief, respondent moved to dismiss based on the purported legal insufficiency of the state's evidence. The trial justice dismissed the petition alleging first-degree child molestation sexual assault because he could not find penetration beyond a reasonable doubt. However, he denied the motion concerning the petition alleging second-degree child molestation sexual assault.

During respondent's case-in-chief, Junior testified that he did not recall being in a room alone with both Jennifer and respondent, nor did he recollect a room that matched the description given by Jennifer.

In a bench decision after the trial, the trial justice adjudged respondent delinquent on the charge of second-degree child molestation sexual assault. The trial justice recognized that the outcome hinged on Jennifer's credibility. He concluded that Jennifer was "an incredibly candid and forthright witness," and stated that "in viewing the victim on the stand, * * * the Court was very impressed with her as a witness. Certainly, most [ten] year olders don't come across as mature as this particular young lady was." Although the trial justice acknowledged that there were some inconsistencies in Jennifer's story, he found that the evidence was "clearly strong enough to find sexual contact on at least two occasions." Indeed, he determined that "the State has met its burden of proof beyond a reasonable doubt that there was, in fact, a sexual contact by [respondent] with the alleged victim, and that, in fact, through his efforts, he, also, forced her to touch him in a sexual way."

The trial justice committed respondent to the "care, custody, and control of the superintendent of the Rhode Island Training School until further order of the court." That commitment, however, was suspended and respondent was placed on probation until further order of the court.

After the trial justice's ruling, respondent raised a constitutional objection to the requirement that he register as a sex offender. The trial justice stayed the registration requirement to provide the parties with time to brief the issue of its constitutionality with respect to juvenile offenders. The respondent contended that the sex-offender-registration requirement was inconsistent with the hallmarks of the juvenile-justice system—confidentiality and rehabilitation. In a fifteen-page written decision, the trial justice examined and upheld the constitutionality of the Registration Act as it applied to juvenile offenders. Accordingly, he vacated the stay and

ordered respondent to register as a sex offender.

The respondent appealed both the delinquency determination as well as the trial justice's decision that the Registration Act was constitutional as applied to juveniles. These two appeals were consolidated.

## II

## Analysis

On appeal, respondent argues that the state's evidence failed to prove the alleged sexual contact between Jennifer and respondent beyond a reasonable doubt. Specifically, respondent argues that because of the inconsistencies in Jennifer's testimony, as well as the circumstances leading up to Jennifer's accusation, the trial justice erred in concluding that respondent sexually assaulted Jennifer. The respondent also maintains that the Registration Act compromises the confidentiality inherent in the juvenile-justice system and, therefore, renders the juvenile delinquency adjudication tantamount to an adult criminal conviction. Accordingly, respondent contends, either the Registration Act is unconstitutional as applied to juveniles or respondent was entitled to a jury trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution and article 1, sections 2 and 10, of the Rhode Island Constitution.

## A

## Delinquency Adjudication

■ When this Court reviews the findings of fact by a trial justice in a delinquency adjudication, we apply a deferential standard of review. *In re Ryan B.*, 739 A.2d 232, 235 (R.I.1999). We must review the record to determine whether legally competent evidence exists therein to support the findings made by the Family Court trial justice. *Id.* (quoting *In re*

*Malik D.*, 730 A.2d 1070, 1072 (R.I.1999)). Indeed, this Court gives substantial deference to the findings of a trial justice sitting without a jury, and will not disturb those findings unless the trial justice has overlooked or misconceived material evidence or was otherwise clearly wrong. *In re Jessica C.*, 690 A.2d 1357, 1362 (R.I.1997).

■ Traditionally, we also have afforded deference to credibility determinations made by a trial justice sitting without a jury, so long as they are reasonable, logical, and flow from established facts. *Blue Cross Blue Shield of Rhode Island v. Najarian*, 865 A.2d 1074, 1081 (R.I.2005) (quoting *Rhode Island Turnpike Bridge Authority v. Bethlehem Steel Corp.*, 446 A.2d 752, 755 (R.I.1982)). Accordingly, we have acknowledged that credibility determinations made by a trial justice who has actually observed the human drama that is part and parcel of every trial and who has had an opportunity to appraise witness demeanor and take into account other realities that cannot be grasped from a reading of a cold record should be accorded great respect. *In re Dissolution of Anderson, Zangari & Bossian*, 888 A.2d 973, 975 (R.I.2006).

The respondent maintains that the trial justice erred in adjudging him delinquent on the charge of second-degree child molestation sexual assault. Because the decision turned on Jennifer's credibility, respondent alleges that the inconsistencies in her testimony render her not credible. The respondent further contends that Jennifer probably fabricated the instances of sexual contact with respondent so she could provide her mother with an explanation for why she engaged in sexual activity with her female cousin. Indeed, respondent characterizes Jennifer's mother's questioning of Jennifer as suggestive and

comparable to coercive police interrogation.

After dismissing the delinquency petition for first-degree sexual assault, the only issue remaining before the trial justice was whether respondent engaged in sexual contact with Jennifer. Because of the dearth of physical evidence, this determination turned solely on Jennifer's testimony and, therefore, on her credibility. In assessing Jennifer's testimony, the trial justice found her to be an incredibly candid and forthright witness and quite mature for her young age. Despite the inconsistencies, the trial justice nevertheless determined that the evidence was sufficient to find sexual contact by respondent on at least two occasions. He explained that "the State has met its burden of proof beyond a reasonable doubt that there was, in fact, a sexual contact by [respondent] with the alleged victim, and that, in fact, through his efforts, he, also, forced her to touch him in a sexual way."

We have held that it is not typically the role of this Court to second-guess the credibility determinations of the trial justice. *See In re Jessica C.*, 690 A.2d at 1362. Certainly the trial justice's determination that Jennifer was a credible witness was rationally supported by competent evidence. *See Najarian*, 865 A.2d at 1081. Jennifer was able to testify about three different events, and she could testify with great specificity about two of those three instances. The trial justice properly concluded that the inconsistencies respondent referred to were insufficient to raise a reasonable doubt with respect to the state's case. Thus, based upon our review of the record, it is clear that the trial justice did not err in finding respondent guilty of second-degree child molestation sexual assault.

## B

## Constitutionality of Juvenile Sex Offender Registration

The juvenile-justice system exists independently from the adult criminal system, and the objective underlying each system is distinct. *See* Barry C. Feld, *The Juvenile Court Meets the Principle of Offense: Punishment, Treatment, and the Difference it Makes,* 68 B.U. L.Rev. 821, 824–25 (1988). The primary goals of the juvenile-justice system are protection, rehabilitation, and treatment of the offender, whereas the criminal system seeks to punish the offender. *Id.* at 824. The respondent contends that the Registration Act blurs the two schemes and defeats the confidentiality inherent in the juvenile-justice system, thereby producing a stigma that would last respondent's lifetime, long after he attains the age of majority. The respondent also asserts that the Registration Act undermines the basis upon which the juvenile-justice system is founded and, therefore, renders the juvenile adjudication tantamount to an adult criminal conviction, thereby implicating his right to a jury trial.

This Court has yet to address the constitutionality of the Registration Act with respect to juveniles. In *In re Christopher S.*, 776 A.2d 1054, 1057 (R.I.2001), we declined to address this precise issue. The Family Court had certified three questions to this Court:

"(1) Is the Rhode Island Registration and Community Notification Act, Chapter 37.1 of R.I.G.L. as applied to juveniles constitutional?

"(2) If it is constitutional, in light of the fact that the Act removes the confidentiality that has thus far been an essential part of the juvenile system, are juveniles accused of sexual offenses entitled to a trial by jury?

"(3) Does a juvenile have the right to a jury trial, if he/she is subjected to registration as a sex offender past his/her twenty-first birthday?" *In re Christopher S.*, 776 A.2d at 1055.

Despite the certification, this Court opted not to answer the first question because the constitutionality of the Registration Act was neither raised in nor decided by the Family Court. *Id.* The instant matter, however, is properly before this Court because respondent raised the issue of the Registration Act's constitutionality immediately after the trial justice's delinquency determination.

■ We have held that "[i]n dealing with constitutional issues, '[b]ecause of the broad plenary power of the General Assembly, this [C]ourt's evaluation of legislative enactments has been extremely deferential; moreover, we have interfered with such enactments only when the legislation at issue palpably and unmistakably could be characterized as an excess of legislative power.'" *In re Christopher S.*, 776 A.2d at 1057 (quoting *City of Pawtucket v. Sundlun*, 662 A.2d 40, 44–45 (R.I.1995)). Therefore, "Unless the party challenging the statute's constitutionality can 'prove beyond a reasonable doubt that the act violates a specific provision of the constitution or the United States Constitution, this Court will not hold the act unconstitutional.'" *Mackie v. State*, 936 A.2d 588, 595 (R.I.2007) (quoting *Cherenzia v. Lynch*, 847 A.2d 818, 822 (R.I.2004)).

### 1

### Confidentiality of Juvenile Justice System

■ Pursuant to § 11–37.1–3(a), a juvenile who has been found delinquent based on conduct that would constitute second-degree child molestation sexual assault if committed by an adult "shall be required to register his or her current address with the local law enforcement agency having jurisdiction over the city or town in which the person having the duty to register resides for the time period specified in § 11–37.1–4." Section 11–37.1–4(j) pertains specifically to juveniles and provides:

"Any juvenile having the duty to register under subsections (b) and (c) of this section shall be required to annually register in person with the local law enforcement agency having jurisdiction over the city or town in which the juvenile having the duty to register resides for fifteen (15) years subsequent to the date of release from confinement or placement in the community or probation for such offense or offenses and to verify his or her address on a quarterly basis for said fifteen (15) years. However, if a juvenile is adjudicated delinquent under § 11–37–8.1 or 11–37–8.3, the court shall assess the totality of the circumstances of the offense and if the court makes a finding that the conduct of the parties is criminal only because of the age of the victim, the court may have discretion to order the juvenile to register as a sex offender as long as the court deems it appropriate to protect the community and to rehabilitate the juvenile offender. Registration shall be subject to the provisions of this chapter."

The General Assembly has tended to advance society's interest in safeguarding the identity of juvenile offenders from the public. *Providence Journal Co. v. Rodgers*, 711 A.2d 1131, 1137 (R.I.1998). *See, e.g.*, G.L.1956 § 14–1–64(a) ("All police records relating to the arrest, detention, apprehension, and disposition of any juveniles shall be kept in files separate and apart from the arrest records of adults and shall be withheld from public inspection * * *."); *see also Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire*, 637 A.2d 1047, 1051–52 (R.I.1994) (*Falstaff*

*Brewing Corp.*) (recognizing the General Assembly's "intent to afford juveniles the opportunity to enter adulthood free of the stigmatization that follows criminal offenders").

Yet, the General Assembly also has required that all people, including juveniles, who have been charged with second-degree child molestation sexual assault, register their name and address with their local enforcement agency. *See* § 11–37.1–4(j). The respondent maintains that this requirement manifestly defeats the confidentiality guarantees inherent in a juvenile proceeding.

As we previously have noted, this Court never has addressed the issue of whether sex-offender registration violates the confidentiality of juvenile proceedings. However, the trial justice noted in his decision, the "confidentiality afforded to a juvenile is not absolute." We agree. For example, § 14–1–66 authorizes a crime victim to obtain the name and address of the juvenile accused of committing the crime so the victim can commence a civil suit against the juvenile. Indeed, in *Falstaff Brewing Corp.,* this Court acknowledged that "by allowing disclosure of the names of juveniles, the Legislature [through § 14–1–66] lifted the cloak of confidentiality that generally protects juvenile offenders." *Falstaff Brewing Corp.,* 637 A.2d at 1050. Further, G.L.1956 § 42–72–8 provides for a number of instances in which a juvenile record may be disclosed.

The jurisdictions that have grappled with this issue have concluded that sex-offender-registration acts do not violate this confidentiality. In *In re Appeal in Maricopa County Juvenile Action No. JV–132744,* 188 Ariz. 180, 933 P.2d 1248, 1250–51 (Ct.App.1996), an Arizona appellate court noted that, although juvenile proceedings traditionally have been confidential, such confidentiality nevertheless has eroded in favor of more pressing public concerns, such as notification to local enforcement agencies. *See also In re Welfare of C.D.N.,* 559 N.W.2d 431, 433 (Minn. Ct.App.1997) ("Because registration only requires juveniles to inform police of their address, it restricts neither their access to employment and education nor their freedom to travel.").

Even in spite of the trend toward the partial erosion of confidentiality in the juvenile-justice system, it is noteworthy that both the registration and any information accompanying the registration are available only to law enforcement agencies and are not disseminated to the public at large. This is a significant consideration.

Accordingly, we conclude that the Registration Act is not inconsistent with the prevailing view that juvenile proceedings *generally* should be confidential. However, the confidentiality value is not an absolute nor does it exist in a vacuum; there are times (and this is one such time) when that value must give way to other legitimate societal priorities.

**2**

**Right to Jury Trial**

■ The right to a trial by jury is perhaps "the most significant procedural safeguard that is unavailable in traditional juvenile proceedings." *In re Welfare of C.D.N.,* 559 N.W.2d at 434. The United States Supreme Court ruled, in 1971, that federal due process did not guarantee the right to a jury trial in the adjudicative phase of a state juvenile-delinquency proceeding. *McKeiver v. Pennsylvania,* 403 U.S. 528, 545, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Similarly, this Court has determined that under the Rhode Island constitution a juvenile who has been found to be a delinquent is not entitled, as a matter of constitutional right, to a jury trial. *In*

*re McCloud*, 110 R.I. 431, 436, 293 A.2d 512, 516 (1972) (holding that a juvenile is not constitutionally entitled to a jury trial).

Despite these rulings, respondent maintains that this particular juvenile adjudication, which requires him to register as a sex offender, renders his case indistinguishable from an adult criminal conviction and thus entitles him to a jury trial. The respondent's contention represents an issue of first impression for this Court. However, numerous other jurisdictions have addressed the issue of whether sex-offender registration may constitutionally be imposed on a juvenile who has not been tried by a jury; all these jurisdictions have ruled in favor of the constitutionality of sex-offender registration. These courts have uniformly relied upon the consideration that the purpose of registration is not punishment, but protection of the public. *See Kaiser v. State*, 641 N.W.2d 900, 905 (Minn.2002) (concluding that registration acts are "civil and regulatory in nature and are imposed in the interest of public safety").

In *In re Jeremy P.*, 278 Wis.2d 366, 692 N.W.2d 311, 319 (Ct.App.2004), a Wisconsin appellate court ruled that sex-offender registration was not criminal punishment and, therefore, the defendant had no right to a jury trial under either the federal or state constitution. *See also In re Alva*, 33 Cal.4th 254, 14 Cal.Rptr.3d 811, 92 P.3d 311, 325 (2004) ("Registration has not historically been viewed as punishment, imposes no direct disability or restraint beyond the inconvenience of compliance, and has a legitimate nonpenal objective. Though registration may have incidental deterrent or retributive effects, and applies to conduct which is already a crime, these features are not sufficient to outweigh the statute's regulatory nature.").

Addressing a similar issue, a Colorado appeals court determined that the statuto-ry duty to register as a sex offender did not constitute criminal punishment. *In re J.T.*, 13 P.3d 321, 323 (Colo.Ct.App.2000). Accordingly, the juvenile had no statutory right to a jury trial. *Id. See also In re Welfare of C.D.N.*, 559 N.W.2d at 435 (refusing to recognize a right to a trial by jury in juvenile proceedings).

It is evident that the purpose of the Registration Act is not to punish the offending juvenile, but rather to protect the safety and general welfare of the public. Supplying the names and addresses of sex offenders to law enforcement agencies enables the agencies to deal more successfully with the serious problem of recidivist sex offenders. Accordingly, we conclude that merely requiring sex-offender registration does not transform a juvenile adjudication into the equivalent of an adult criminal proceeding. Instead, the proceeding remains rehabilitative, rather than punitive, and retains appropriate (albeit limited) safeguards with respect to confidentiality. Therefore, because the registration requirement does not constitute criminal punishment, there is no right to a jury trial.

■ Additionally, this Court consistently has held that "where two apparently inconsistent provisions are contained in a statute, every effort should be made to construe and apply the provisions as consistent." *Falstaff Brewing Corp.*, 637 A.2d at 1051 (citing *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I.1987)). However, "[w]here two provisions are irreconcilable, the inconsistency may be resolved by giving effect to the provision last enacted." *Id.* (citing *Davis v. Cranston Print Works Co.*, 86 R.I. 196, 199, 133 A.2d 784, 786 (1957)). Indeed, we have determined that when there are two or more statutory provisions in conflict, "we ought to give effect to that one which will most effectively carry out

the legislative intent and purpose." *Davis*, 86 R.I. at 199, 133 A.2d at 786.

As discussed above, the General Assembly has expressed an interest in providing confidentiality for juvenile offenders. *See, e.g.,* § 14–1–64(a) (requiring police records pertaining to juvenile offenders to be withheld from public inspection). However, the General Assembly also has expressed a competing interest in requiring juvenile offenders to register their names and addresses with local law enforcement agencies; indeed, juveniles were explicitly included in the categories of those subject to the Registration Act. *See* § 11–37.1–4(j) (setting forth registration requirements particular to juveniles). The Registration Act was enacted after any of the protective statutes referred to above were enacted. Accordingly, the Registration Act is more indicative of the most recent legislative intent and must be given effect. Moreover, failing to require juveniles to register as sex offenders would hinder the very objective of the Registration Act.

We conclude, therefore, that the nature of the juvenile-justice system is not significantly compromised by a sex-offender-registration requirement. As such, the Registration Act is constitutional as applied to juveniles and respondent is not entitled to a jury trial.

We pause to comment that perhaps the better rule with respect to juveniles would be to provide the trial justice with the discretion to determine whether a respondent who has reached twenty-one years of age should be required to register as a sex offender. This, however, is a decision that must be left to the General Assembly.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Family Court. The record shall be remanded to the Family Court.