April 23, 2018

**Supreme Court**

State                    :

  v.                     :          No. 2015-108-M.P.

                                    (P2/12-2199A)

Frederick Gibson         :


Frederick Gibson         :

  v.                     :          No. 2016-149-Appeal.

                                    No. 2017-317-M.P.

State of Rhode Island    :          (PM 14-4730)

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| State | : | |
| v. | : | No. 2015-108-M.P. |
| | | (P2/12-2199A) |
| Frederick Gibson. | : | |
| | | |
| Frederick Gibson | : | |
| | | |
| v. | : | No. 2016-149-Appeal. |
| | | No. 2017-317-M.P. |
| | | (PM 14-4730) |
| State of Rhode Island. | : | |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.** The petitioner/defendant, Frederick Gibson, was convicted of second-degree child molestation sexual assault, and, as a sex offender, he became obligated to register with and notify local authorities when he changed his residence from town to town in the state of Rhode Island. But one thorny issue to be determined in these consolidated cases is the duration of that obligation. Is he required to register for life, as the state argues, or for a period of ten years, as he maintains? An equally vexing question that must be addressed by this Court in this case of first impression is whether changes to the law requiring Gibson to register—namely, two amendments to G.L. 1956 § 11-37.1-4(a), which governs the duration and frequency of registration, and an increase in the punishment for the failure to comply with the

- 1 -

sex-offender registration laws—violate the *ex post facto* clauses of the United States and Rhode Island Constitutions.

Gibson seeks review on certiorari of a decision of a magistrate of the Superior Court denying his motion to dismiss a 2012 charge for failing to notify law enforcement of a change in residence, in violation of §§ 11-37.1-9 and 11-37.1-10. In denying Gibson's motion to dismiss, the magistrate determined that Gibson had a lifetime duty to register; therefore, his duty to register had not expired, and the 2012 charge would not be dismissed. Also, Gibson appeals from a judgment embodying a decision of a justice of the Superior Court denying his application for postconviction relief from three failure-to-notify convictions in 2007, 2009, and 2010, in violation of § 11-37.1-9.[1] The hearing justice in the postconviction relief matter also found that Gibson was burdened by a lifetime duty to register. In addition, she ruled that Gibson's three failure-to-notify convictions did not violate the *ex post facto* clause.

For the reasons set forth in this opinion, we affirm both the magistrate's denial of Gibson's motion to dismiss and the judgment of the Superior Court denying Gibson's application for postconviction relief. However, in so doing, we deviate slightly from the reasoning on which the decision and judgment were based. We depart from the conclusions of the magistrate and the hearing justice that Gibson has a lifetime duty to register. Rather, we hold that, in accordance with the language of §§ 11-37.1-18 and 11-37.1-4(a), Gibson's duty to register expires "ten (10)

---

[1] Because of the considerable overlap of the issues presented in these cases, we consolidated Gibson's petition for a writ of certiorari and his appeal from the denial of his application for postconviction relief. Gibson's challenge to the denial of postconviction relief comes to us on appeal, not certiorari, because he filed his notice of appeal prior to the 2015 amendment to G.L. 1956 § 10-9.1-9 requiring an applicant seeking review of a final judgment regarding postconviction relief to do so "by filing a petition for writ of certiorari * * *." *See* P.L. 2015, ch. 91, § 1; P.L. 2015, ch. 92, § 1. Still, final judgment in the Superior Court did not enter until July 7, 2015, shortly after that amendment's date of enactment. In what appears to be an attempt to ensure that the appeal of his application for postconviction relief was procedurally proper, Gibson filed a petition for a writ of certiorari and a motion to consolidate, which we granted.

years from the expiration of sentence for the offense * * *." Section 11-37.1-4(a). We also hold that Gibson's prior failure-to-notify convictions in 2007, 2009, and 2010 do not run afoul of the *ex post facto* clause.

# I

# Facts and Travel

On November 18, 1994, Gibson entered an *Alford* plea[2] to a charge of second-degree child molestation sexual assault, in violation of § 11-37-8.3.[3] As a consequence of his plea, he received a fifteen-year sentence, with four and a half years to serve and the balance suspended, with probation. Under the provisions of § 11-37-16, a statute that the General Assembly had enacted in 1992, Gibson was required to register as a sex offender.[4] In 1996, the General Assembly repealed § 11-37-16 and enacted a more comprehensive registration regime entitled the "Sexual Offender Registration and Community Notification Act," chapter 37.1 of title 11 (the "Registration Act"). *See* P.L. 1996, ch. 104, §§ 1, 3. Although the Registration Act repealed and

---

[2] Deriving its name from *North Carolina v. Alford*, 400 U.S. 25 (1970), "[t]he *Alford* plea enables a trial justice to accept a defendant's guilty plea even though the defendant maintains his or her innocence as long as the state presents a factual basis for the plea other than the defendant's own admission." *State v. Baptista*, 632 A.2d 343, 344 n.1 (R.I. 1993). Nevertheless, "[a]lthough a criminal defendant may be relieved of the embarrassment of admitting participation in the crime or comforted by the fact that he or she has maintained his innocence * * * the result is abundantly clear: the defendant stands convicted of the crime." *Mattatall v. State*, 947 A.2d 896, 899 n.4 (R.I. 2008) (quoting *Armenakes v. State*, 821 A.2d 239, 242 (R.I. 2003)).

[3] Under G.L. 1956 § 11-37-8.3, "[a] person is guilty of a second degree child molestation sexual assault if he or she engages in sexual contact with another person fourteen (14) years of age or under."

[4] Prior to its repeal, G.L. 1956 § 11-37-16(a) stated that:

> "Any person who since July 1, 1992 has been, or shall hereafter be, convicted of any offense in violation of this chapter * * * shall, within sixty (60) days after [July 1, 1992], or within thirty (30) days of coming into any city or town in which such person shall reside, register with the chief of police of said city or town."

replaced § 11-37-16, it also preserved the duty to register of persons, like Gibson, whose duty to register had arisen under the repealed statute:

> "Any person who pursuant to the provisions of former § 11-37-16 had a duty to register under that section after having been convicted of any violation of the provisions of chapter 37 of this title, or for a conviction in another state of first degree sexual assault which if committed in this state would constitute a violation of chapter 37 of this title, shall have the duty to register in accordance with the provisions of this chapter. Nothing in this section shall be construed to abrogate any duty to register which exists or existed under the provisions of former § 11-37-16." Section 11-37.1-18.

Over a decade later, in 2007, Gibson was charged with failing to notify local law enforcement of his change in residence, in violation of § 11-37.1-9.[5] To that charge, Gibson pleaded nolo contendere, and he was sentenced to a five-year suspended sentence, with probation. Although this was Gibson's first conviction for failing to notify in accordance with the Registration Act, it would not be his last. In both 2009 and 2010, Gibson—for a second and third time, respectively—pleaded nolo contendere to failing to notify in violation of § 11-37.1-9. For his 2009 failure-to-notify conviction, Gibson received a three-year sentence, with ninety

---

[5] The pertinent subsection, § 11-37.1-9(d), which governs the duty of sex offenders who change their residence within the state of Rhode Island, provides that:

> "A person who has been convicted of an offense which requires registration under this chapter and who changes his or her residence address to another city or town in Rhode Island, shall notify the local law enforcement agency in the city or town from which the person is moving before the person establishes residence in the new location, and shall register with the local law enforcement agency in the city or town in which the person is moving not later than twenty-four (24) hours after the person establishes residence in the new city or town. A person who has been convicted of an offense which requires registration under this chapter and who changes his or her residence within a city or town in Rhode Island shall notify the local law enforcement agency in the city or town not later than twenty-four (24) hours after the person changes the residence within the city or town."

days to serve and the balance suspended with probation.  For his 2010 transgression, he received a ten-year sentence, with six months to serve and the balance suspended with probation.  Thus, by the close of 2010, Gibson had been convicted on three separate occasions of failing to notify in accordance with the Registration Act.

Finally, in July 2012, Gibson was charged for a fourth time with failing to notify in violation of §§ 11-37.1-9 and 11-37.1-10.  To this charge, though, Gibson did not plead nolo contendere.  Rather, he moved to dismiss the criminal information, arguing that his duty to register as a sex offender had expired in 2004—ten years from the date of his conviction in 1994 and well before the 2012 charge.  However, a magistrate of the Superior Court decided otherwise.  In a written decision, the magistrate denied Gibson's motion to dismiss, concluding that Gibson was saddled with a lifetime duty to register.  Gibson then filed a petition for a writ of certiorari with this Court, seeking review of the magistrate's decision.  We granted his petition.

Several months after the magistrate denied his motion to dismiss, Gibson filed an application for postconviction relief from his three prior failure-to-notify convictions that had occurred in 2007, 2009, and 2010.  Before a justice of the Superior Court, Gibson made the same argument that he had raised in his motion to dismiss: the duration of his duty to register was limited to ten years, not for the remainder of his life.  He further argued that his prior failure-to-notify convictions violated the *ex post facto* clauses of the United States and Rhode Island Constitutions because (a) amendments to the Registration Act impermissibly extended the duration of his duty to register, and (b) the Registration Act increased the punishment for failing to comply with the sex-offender registration laws from a misdemeanor to a felony.  After two hearings on the matter, the hearing justice denied Gibson's application for postconviction relief,

determining first that Gibson had a lifetime duty to register, and second that there was no violation of the *ex post facto* clause. Gibson appealed that ruling to this Court.[6]

The issues before this Court are twofold: whether the duration of Gibson's duty to register lasts ten years or for the rest of his life, and whether Gibson's 2007, 2009, and 2010 failure-to-notify convictions violate the *ex post facto* clause.

**II**

**Motion to Dismiss: The Duration of Gibson's Duty to Register**

The first issue Gibson presents to this Court is whether the duration of his duty to register as a sex offender is for a lifetime or is limited to ten years. Significantly, he does not dispute his *duty* to register. The question for this Court is whether the *duration* of Gibson's duty to register is governed by either the repealed § 11-37-16—the registration statute in effect in 1993, the year of the underlying sex offense—or chapter 37.1 of title 11—the registration statute he has been convicted of violating on three separate and subsequent occasions.

As noted above, in 2012, Gibson was charged by criminal information with, for the fourth time, failing to notify in violation of §§ 11-37.1-9 and 11-37.1-10.[7] He moved to dismiss the criminal information,[8] arguing to the magistrate that his duty to register expired in 2004, ten years from the date of his conviction for second-degree child molestation sexual assault. The state, on the other hand, argued that Gibson's duty to register was without expiration. According to the state, that was so because the statute in effect at the time of his conviction in 1994, the

---

[6] Although Gibson's appeal of the hearing justice's decision was premature, because a final judgment was entered several months thereafter, his appeal is considered timely. *See State v. Austin*, 114 A.3d 87, 94 n.9 (R.I. 2015).

[7] Section 11-37.1-10 prescribes the penalties for the failure to comply with the Registration Act.

[8] Gibson moved to dismiss pursuant to Rule 9.1 of the Superior Court Rules of Criminal Procedure, a motion that the magistrate *sua sponte* converted to one brought pursuant to Rule 12(b)(2). Neither Gibson nor the state has taken issue with the magistrate's *sua sponte* conversion of the motion to dismiss.

former § 11-37-16, mandated a lifetime duty to register. In the alternative, the state also argued that Gibson's duty to register, as a consequence of the child molestation conviction, even if not for life, would not expire until at least November 2019, ten years after the expiration of his sentence for second-degree child molestation sexual assault, in accordance with § 11-37.1-4(a).

In a written decision, the magistrate denied Gibson's motion to dismiss, holding that the statute in effect at the time of his plea, § 11-37-16, burdened him with lifetime registration. Relying on an opinion from the United States District Court for the District of Maine that interpreted the repealed Rhode Island statute, the magistrate held that the clear and unambiguous language of § 11-37-16 imposed a lifetime duty to register, because it lacked a durational requirement.[9] Then, quoting from this Court's opinion in *State v. Flores*, 714 A.2d 581 (R.I. 1998), the magistrate reasoned that Gibson, who was charged with a crime prior to the enactment of the Registration Act in 1996, "must register as a sex offender pursuant to the registration requirements in effect at the time he was charged, that is, pursuant to § 11-37-16." *Flores*, 714 A.2d at 583. For those reasons, the magistrate concluded that Gibson had a lifetime duty to register under § 11-37-16, and he denied Gibson's motion to dismiss the 2012 charge.

## A

### Standard of Review

Whether Gibson has a lifetime or ten-year duty to register is a question of statutory interpretation, a matter that we review *de novo*. *State v. Santos*, 870 A.2d 1029, 1031 (R.I. 2005) ("When faced with questions of statutory interpretation, this Court approaches the matter on a *de*

---

[9] That case was *United States v. Stevens*, 598 F. Supp. 2d 133, 143 (D. Me. 2009), *as amended* (Feb. 19, 2009), *aff'd*, 640 F.3d 48 (1st Cir. 2011), *vacated on other grounds*, 565 U.S. 1255 (2012). For the reasons articulated in this opinion, with respect to whether Gibson has a lifetime duty to register, we are not, with all due respect to that court, persuaded by the reasoning set forth in that decision.

*novo* basis."). "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* at 1032 (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)). If, however, the language of a statute is ambiguous, this Court turns to "our well-established maxims of statutory construction in an effort to glean the intent of the Legislature." *Town of Warren v. Bristol Warren Regional School District*, 159 A.3d 1029, 1039 (R.I. 2017) (quoting *Bucci v. Lehman Brothers Bank, FSB*, 68 A.3d 1069, 1078 (R.I. 2013)).

## B

### Discussion

We are confronted with a nettlesome question: Which statute controls the duration of Gibson's duty to register—the repealed § 11-37-16, which was silent with respect to the durational limit on the duty to register, arguably imposing a lifetime duty to register, or § 11-37.1-4(a), which limits the duty to register of certain offenders to "a period of ten (10) years from the expiration of sentence"? Gibson, who does not dispute that he was under a duty to register, argues that the ten-year duration contained in § 11-37.1-4(a) controls. However, he further argues that the duration of his duty to register was set as of 1996, when the version of the Registration Act in effect at that time stated that the duty to register for offenders such as him ran "for a period of ten (10) years subsequent to the date of conviction * * *." *See* P.L. 1996, ch. 104, § 1. According to Gibson, because his conviction for second-degree child molestation sexual assault was in 1994, his duty to register concluded ten years later, in 2004.

The state does not agree. It first posits that the duration of Gibson's duty to register is governed by § 11-37-16, the statute in effect at the time of the sex offense. Under the state's interpretation of that statute, Gibson has a lifetime duty to register because he was convicted in

1994, and because the statute was silent on the issue of how long an offender must register. Indeed, the state maintains that § 11-37.1-4 applies by its specific and unambiguous terms only to offenses occurring after its enactment in 1996.

In the alternative, the state contends that the duration of Gibson's duty to register, if governed by chapter 37.1 of title 11, ends in 2019, ten years from the expiration of his fifteen-year sentence, pursuant to the terms of the current version of § 11-37.1-4, and not, as Gibson maintains, ten years from the date of his 1994 conviction, under the terms of the since-amended 1996 version of that section.

According to Gibson, his duty to register expired in 2004. But, to accept that argument would require us to ignore changes to § 11-37.1-4(a) that extended the duration of the duty to register for those subject to its terms from "ten (10) years subsequent to the date of conviction" to "ten (10) years subsequent to the date of release from confinement or placement on parole, supervised release or probation" to the current requirement of "ten (10) years from the expiration of sentence for the offense * * *." *See* P.L. 1996, ch. 104, § 1; P.L. 1997, ch. 156, § 1; P.L. 2003, ch. 162, § 1; P.L. 2003, ch. 170, § 1.

With respect to the state's argument that there is a lifetime obligation, it does not escape us that we cannot overlook the specific language of § 11-37.1-18, which provides, in pertinent part, that:

> "*Any person who pursuant to the provisions of former § 11-37-16 had a duty to register under that section* after having been convicted of any violation of the provisions of chapter 37 of this title * * * *shall have the duty to register in accordance with the provisions of this chapter.*" (Emphasis added.)

That language preserves only Gibson's *duty* to register, not its *duration*. *See* § 11-37.1-18. To complicate matters further, the 1996 Registration Act included a general provision that it "shall

apply to those persons who are convicted of an offense requiring registration * * * which was committed *after* the effective date of [the Registration Act]." *See* P.L. 1996, ch. 104, § 4 (emphasis added). Of course, the sex offense to which Gibson later pled was in 1993, three years prior to the effective date of the Registration Act. *See Flores*, 714 A.2d at 583.

After considering the thoughtful arguments of counsel, we are persuaded that a slightly different rationale resolves the question of the duration of Gibson's duty to register. Starting with § 11-37.1-18, it is clear to us that, in enacting the Registration Act, the Legislature preserved Gibson's duty to register because he had an obligation to do so under the former § 11-37-16. Therefore, in our opinion the passage of the Registration Act did not free Gibson from the responsibility to register. However, the General Assembly's mandate that offenders "shall have the duty to register *in accordance with the provisions* of [chapter 37.1 of title 11]" included the ten-year duration period set forth in § 11-37.1-4(a). Section 11-37.1-18 (emphasis added). It is important to note that the savings clause in § 11-37.1-18 says nothing about the duration of the duty to register. *Id.* ("Nothing in this section shall be construed to abrogate any *duty* to register which exists or existed under the provisions of former § 11-37-16." (Emphasis added.)). This clear and unambiguous language constrains us to conclude that, in accordance with chapter 37.1, the duration of Gibson's duty to register is governed by § 11-37.1-4(a).[10] In other words, when it repealed and replaced § 11-37-16, the General Assembly not only preserved the duty to register

_____

[10] Looking at the Registration Act as a whole, we also note that the crime for which Gibson was convicted—second-degree child molestation sexual assault in violation of § 11-37-8.3—is defined in § 11-37.1-3(a)(1) as "a criminal offense against a victim who is a minor[,]" bringing Gibson within the universe of persons whose annual duty to register is governed by § 11-37.1-4(a). *See* § 11-37.1-4(a) (stating that "[a]ny person required to register under § 11-37.1-3(a)(1) * * * shall annually register * * * for a period of ten (10) years from the expiration of sentence for the offense * * *"); § 11-37.1-3(a)(1) (requiring "[a]ny person who, in this or any other jurisdiction * * * has been convicted of a criminal offense against a victim who is a minor" to register as a sex offender "for the time period specified in § 11-37.1-4"); § 11-37.1-2(e)(3) (defining a "[c]riminal offense against a victim who is a minor" to include "[a]ny violation of * * * [§] 11-37-8.3").

from that statute, but it also imposed the provisions of the new enactment, including the duration of registration.[11]  Therefore, it is our opinion that Gibson's duty to register is for a period of ten years, not a lifetime.

The next question we must address is, ten years from when?  We do not agree with Gibson that the duration of his duty to register was fixed as of the enactment of the Registration Act in 1996.  As we explained above, in 1997 and again in 2003, the General Assembly amended the durational period contained in § 11-37.1-4(a), extending it from, in 1996, "ten (10) years subsequent to the date of conviction" to, in 1997, "ten (10) years subsequent to the date of release from confinement or placement on parole, supervised release or probation" and, as of 2003, "ten (10) years from the expiration of sentence for the offense * * *."  *See* P.L. 1996, ch. 104, § 1; P.L. 1997, ch. 156, § 1; P.L. 2003, ch. 162, § 1; P.L. 2003, ch. 170, § 1; *see also* § 11-37.1-4(a).  Those amendments extended Gibson's duty to register beyond 2004, and, in accordance with the provisions of the present version of the Registration Act, *see* § 11-37.1-18, Gibson's duty to register is "ten (10) years from the expiration of sentence for the offense * * *." Section 11-37.1-4(a).

Accordingly, it is our opinion that the magistrate was correct in denying Gibson's motion to dismiss the 2012 charge for failing to notify in violation of §§ 11-37.1-9 and 11-37.1-10. However, we differ from the reasoning on which the magistrate based his decision.  Instead, we hold that § 11-37.1-18 preserved Gibson's duty to register, not its duration.  Thus, in accordance

---

[11] We offer no opinion as to whether the duration of the duty to register under the former § 11-37-16 was a lifetime.  Because the duration of Gibson's duty to register was shoehorned into the Registration Act by virtue of § 11-37.1-18, we need not reach that issue.

- 11 -

with § 11-37.1-18, the duration of Gibson's duty to register is controlled by § 11-37.1-4(a). Simply put, he does not have a lifetime duty to register.[12]

In reaching this conclusion, however, we do acknowledge that there has been understandable uncertainty on this issue based on this Court's previous language in *Flores*—language on which the magistrate relied in his decision. As the magistrate noted, in *Flores*, "this Court conclude[d] that petitioner must register as a sex offender pursuant to the registration requirements in effect at the time he was charged, that is, pursuant to § 11-37-16." *Flores*, 714 A.2d at 583. Moreover, it is true that this Court "reach[ed] [that] conclusion by noting that the registration requirements of chapter 37.1 of title 11 [did] not apply to petitioner by the clear and express language of the public law that enacted that statute." *Id.* However, *Flores* is distinguishable from this case. The petitioner in *Flores* argued that, because of the timing of his conviction and the effective date of the Registration Act in 1996, he had no duty to register whatsoever.[13] *Id.* at 582. Here, however, Gibson contested the *duration* of his duty to register, not the duty itself. Thus *Flores* resolved an issue distinct from the issue with which we are confronted here.

Despite this Court's language in *Flores* regarding the interplay between the effective date of the 1996 Registration Act and that particular petitioner's duty to register, we are firm in our view that the provisions of the Registration Act control here. It would be wholly inconsistent to hold that the provisions of the Registration Act are effective as to Gibson's duty to register but ineffective as to the conditions of his duty to register, including its duration. The specific

---

[12] Because we hold that Gibson's duty to register is not a lifetime, we need not address Gibson's alternative argument that due process demands he receive a hearing to show that he is not at risk of reoffending.

[13] In essence, the petitioner in *Flores* argued that the statute requiring his registration, § 11-37-16, had been repealed and that its replacement, the Registration Act, was by its unambiguous terms applicable only to those who had committed their offenses after July 24, 1996. *State v. Flores*, 714 A.2d 581, 582 (R.I. 1998).

language of § 11-37.1-18 preserving Gibson's duty to register—a duty that preceded the passage of the Registration Act—trumps the general language of the 1996 public law setting forth the effective date of the Registration Act. *See Foster Glocester Regional School Building Committee v. Sette*, 996 A.2d 1120, 1126 (R.I. 2010) ("[T]his Court * * * adheres to the rule of statutory construction that when faced with 'competing statutory provisions that cannot be harmonized, we adhere to the principle that the specific governs the general * * *.'" (quoting *Felkner v. Chariho Regional School Committee*, 968 A.2d 865, 870 (R.I. 2009))).

**III**

**Postconviction Relief**

**A**

**Gibson's Application for Postconviction Relief**

In 2014, Gibson filed an application for postconviction relief seeking to vacate his three failure-to-notify convictions from 2007, 2009, and 2010. In his application, Gibson challenged his convictions on constitutional grounds. His primary contention was that each of those failure-to-notify convictions violated the *ex post facto* clause, pointing out two grounds as to why those convictions were constitutionally infirm. First, based on Gibson's contention that the duration of his duty to register was not for the remainder of his life, but for only ten years, he argued that the General Assembly unconstitutionally extended his duty to register when it amended the Registration Act in 1997 and 2003. According to Gibson, the duration of his duty to register was set under the 1996 version of § 11-37.1-4, which required him to register "for a period of ten (10) years subsequent to the date of conviction * * *." *See* P.L. 1996 ch. 104, § 1. Under that formula, Gibson argued that his duty to register expired in 2004 and that his subsequent convictions in 2007, 2009, and 2010 for failing to notify constituted unconstitutional retroactive

- 13 -

punishment in violation of the *ex post facto* clause. However, the hearing justice dispatched Gibson's argument by holding that he had a lifetime duty to register under the since-repealed § 11-37-16, the registration statute in existence at the time of the second-degree child molestation sexual assault in 1993.

Second, Gibson argued that the 1996 Registration Act unconstitutionally increased the punishment for the crime of failure to register or notify from a misdemeanor to a felony. As Gibson pointed out, under the 1992 Act, failure to notify was a misdemeanor, but, in 1996, under the Registration Act, it became a felony. *See* § 11-37-16(g) (1994 Reenactment); P.L. 1996, ch. 104, § 1. Nevertheless, the hearing justice held that there was no constitutional violation. She reasoned that at the time Gibson committed each criminal offense of failing to notify—in 2007, 2009, and again in 2010—the punishment for the offense was already in place. As she explained, there was no retroactive punishment because the "penalty for failing to [notify] did not change after [Gibson] was charged with the criminal offense of failing to [notify]." The ten-year penalty was added to § 11-37.1-10 in 2003—at least three years prior to Gibson's first failure-to-notify offense in 2006, an offense for which he was convicted in 2007.

However, before turning to the merits of Gibson's *ex post facto* arguments, we must briefly summarize the history of the Registration Act.

**B**

**History of the Registration Act**

In 1992, the General Assembly enacted § 11-37-16, as enacted by P.L. 1992, ch. 196, § 1, imposing on sex offenders a duty to register. Section 11-37-16 provided, in pertinent part, that:

> "Any person who since July 1, 1992, has been, or shall hereafter be, convicted of any offense in violation of this chapter * * * shall, within sixty (60) days after [July 1, 1992], or within thirty (30) days of coming into any city or town in which such person shall

reside, register with the chief of police of said city or town." Section 11-37-16(a) (1994 Reenactment); *see* P.L. 1992, ch. 196, § 1.

The punishment for the failure to register was specified in § 11-37-16(g): "Any person required to register under this section who violates any of its provisions *is guilty of a misdemeanor* and shall be sentenced to serve a term of ninety (90) days in jail and thereafter serve one (1) year probation." *See* P.L. 1992, ch. 196, § 1 (emphasis added).

Four years later, in 1996, the General Assembly repealed § 11-37-16 and replaced it with the Registration Act, chapter 37.1 of title 11. *See* P.L. 1996, ch. 104, §§ 1, 3.[14] As this Court has remarked, "[i]t is apparent that chapter 37.1 of title 11 has established a registration scheme that is more stringent and applies more broadly than the previous version." *Flores*, 714 A.2d at 584. In addition to preserving the duty to register of offenders whose duty originated under the former § 11-37-16, the Registration Act also, in § 11-37.1-4, contained a durational period for the duty to register for certain offenders. *See* P.L. 1996, ch. 104, § 1. As originally enacted in 1996, § 11-37.1-4(A) stated: "Any person required to register under section 11-37.1-3, shall annually register with a designated state law enforcement agency *for a period of ten (10) years subsequent to the date of conviction* for such offense or offenses * * *." *See* P.L. 1996, ch. 104, § 1 (emphasis added).

Moreover, the Registration Act also enhanced the penalty for the criminal offense of the failure to register or notify. Under the 1992 Act, codified as § 11-37-16, the failure to register or notify was a misdemeanor. *See* P.L. 1992, ch. 196, § 1. However, under the 1996 Registration Act, it became a felony. *See* P.L. 1996, ch. 104, § 1. As the 1996 version of § 11-37.1-10(A)

---

[14] Our Legislature was not alone in enacting stringent registration requirements and broad community notification provisions. As we noted in *Flores*, 714 A.2d at 582, the 1996 Registration Act was in part "modeled after Megan's Law[,]" a law that "[b]y 1996, every State, the District of Columbia, and the Federal Government had enacted some variation of * * *." *Smith v. Doe I*, 538 U.S. 84, 90 (2003).

provided, "[a]ny person who is required to register or verify his or her address, who knowingly fails to do so, *shall be guilty of a felony* and upon conviction be imprisoned not more than two (2) years or fines not more than two thousand dollars ($2,000) or both." *See* P.L. 1996, ch. 104, § 1 (emphasis added).

In 1997, the General Assembly acted again. This time, it amended § 11-37.1-4(a), changing the expiration of the duration of an offender's obligation to register from "a period of ten (10) years subsequent to the date of conviction" to "a period of ten (10) years subsequent to the date of release from confinement or placement on parole, supervised release or probation * * *." *See* P.L. 1997, ch. 156, § 1. The language of that ten-year durational period changed a final time in 2003, when the General Assembly amended § 11-37.1-4(a) to provide that the duty to register for "[a]ny person required to register under section 11-37.1-3(a)(1) or (2)" runs "for a period of ten (10) years, from the expiration of sentence for the offense * * *." *See* P.L. 2003, ch. 162, § 1; P.L. 2003, ch. 170, § 1. Since that amendment, the duration of the duty to register as stated in § 11-37.1-4(a) has not changed.

The durational language of § 11-37.1-4(a) was not the only section that the General Assembly amended in 2003. As discussed above, that year, it also increased the penalties for the criminal offense of failing to register or notify. *See* P.L. 2003, ch. 162, § 1; P.L. 2003, ch. 170, § 1. Whereas the 1996 version of the Registration Act made the failure to comply with its provisions a felony, punishable by up to two years in prison and/or a fine of $2,000, after the 2003 amendment, the penalties provision read: "Any person who is required to register or verify his or her address, who knowingly fails to do so, shall be guilty of a felony and upon conviction be imprisoned not more than *ten (10) years*, or fined not more than ten thousand dollars ($10,000), or both." P.L. 2003, ch. 162, § 1; P.L. 2003, ch. 170, § 1 (emphasis added).

- 16 -

To summarize: In 1996, an offender required to register under § 11-37.1-3 had a duty to register for ten years from the date of his conviction; in 1997, that offender had a duty to register for ten years from the date of release from confinement or placement on parole, supervised release, or probation; and, finally, since 2003, the offender has had a duty to register for ten years from the expiration of the sentence. Moreover, in 1992, an offender who failed to register was guilty of a misdemeanor, subject to "a term of ninety (90) days in jail and thereafter * * * one (1) year probation"; in 1996, an offender who failed to register was guilty of a felony, subject to up to two years in jail and/or fines of up to $2,000; and since 2003, an offender who fails to register is guilty of a felony, subject to up to ten years in jail and/or fines of up to $10,000.

## C

### Waiver by Plea

As a threshold matter, the state contends that we should not entertain Gibson's constitutional arguments. As explained above, Gibson has, on three separate occasions, been convicted of failing to notify in violation of § 11-37.1-9. Each conviction—in 2007, 2009, and 2010—was the result of a plea of nolo contendere. For that reason, the state argues that Gibson is severely limited in his ability to launch a collateral attack against those convictions in his application for postconviction relief. According to the state, because Gibson entered those pleas, he waived his right to argue that his 2007, 2009, and 2010 convictions are constitutionally defective. In the state's view, Gibson is limited to contending that his three pleas were the result of ineffective assistance of counsel.

We have long adhered to the proposition "that the decision to enter a plea of *nolo contendere* * * * 'is not one to be taken lightly.'"[15] *Guerrero v. State*, 47 A.3d 289, 300 (R.I.

---

[15] "In Rhode Island, a plea of nolo contendere is treated as a guilty plea." *Guerrero v. State*, 47 A.3d 289, 300 n.12 (R.I. 2012) (quoting *Cote v. State*, 994 A.2d 59, 63 (R.I. 2010)).

2012) (quoting *Cote v. State*, 994 A.2d 59, 63 (R.I. 2010)).  Generally, "in the case of someone who has entered a plea of *nolo contendere*, '[t]he sole focus of an application for post-conviction relief * * * is the nature of counsel's advice concerning the plea and the voluntariness of the plea." *Id.* at 300 (quoting *Gonder v. State*, 935 A.2d 82, 87 (R.I. 2007)).  "That said, although the general rule is that 'a plea of [nolo contendere] waives all nonjurisdictional defects, * * * [it] does not bar appeal of claims that the applicable statute is unconstitutional * * *.'" *Torres v. State*, 19 A.3d 71, 79 (R.I. 2011) (quoting *United States v. Broncheau*, 597 F.2d 1260, 1262 n.1 (9th Cir. 1979)); *see also Guerrero*, 47 A.3d at 300 n.l3.

So, while the state is correct that, generally, Gibson would be limited to arguing over "the nature of counsel's advice concerning [his 2007, 2009, and 2010] plea[s] and the voluntariness of [those] plea[s,]" here, he is not; because he attacks the constitutionality of a statute, the exception to that general rule applies.  *Guerrero*, 47 A.3d at 300, 300 n.13; *Torres*, 19 A.3d at 79.  Thus, he retains the right to assert as-applied challenges to the constitutionality of (1) the 1997 and 2003 amendments to § 11-37.1-4(a) and (2) the Registration Act's enhancement of the penalty for failing to comply with its provisions from a misdemeanor to a felony in 1996.  Those are assertions "that the applicable statute[s] [are] unconstitutional * * *." *Torres*, 19 A.3d at 79.

**D**

**Standard of Review**

Generally, "[w]hen reviewing the denial of postconviction relief, this Court affords great deference to the hearing justice's findings of fact and will not disturb his or her ruling absent clear error or a showing that the [hearing] justice overlooked or misconceived material evidence." *Camacho v. State*, 58 A.3d 182, 185 (R.I. 2013) (quoting *Higham v. State*, 45 A.3d

1180, 1183 (R.I. 2012)).  However, we "will review *de novo* any determination pertaining to an issue concerning an applicant's constitutional rights."  *Id.*

## E

## Discussion

The United States and Rhode Island Constitutions each prohibit the enactment of *ex post facto* laws.  U.S. CONST. art. 1, § 10; R.I. CONST. art. 1, § 12.[16]  As the United States Supreme Court has explained, the *ex post facto* clause "is aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'"  *California Department of Corrections v. Morales*, 514 U.S. 499, 504 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43 (1990)).  Likewise, we have "held that a violation of the *ex post facto* clause occurs when there is a 'retrospective application of law that disadvantages an offender by altering the definition of criminal conduct or increasing the punishment for the crime.'"  *State v. Pereira*, 973 A.2d 19, 32 (R.I. 2009) (quoting *Town of West Warwick v. Local 1104, International Association of Firefighters, AFL-CIO, CLC*, 745 A.2d 786, 788 (R.I. 2000)).[17]  "It is black letter law that the

---

[16] Article 1, section 10 of the United States Constitution states that "[n]o state shall * * * pass any * * * ex post facto law * * *."  Similarly, article 1, section 12 of the Rhode Island Constitution states that "[n]o ex post facto law * * * shall be passed."  "This Court construes the *ex post facto* clauses of the federal and Rhode Island constitutions in a like manner."  *State v. Pereira*, 973 A.2d 19, 32 n.7 (R.I. 2009).

[17] It has long been understood that there are four categories of laws that the *ex post facto* clause prohibits:

> "1st.  Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d.  Every law that aggravates a crime, or makes it greater than it was, when committed. 3d.  Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th.  Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender."  *Pereira*, 973 A.2d at 32-33 n.8 (quoting *State ex rel. Webb v. Cianci*, 591 A.2d 1193,

ex post facto clause in both our state and federal constitutions only prohibit retroactive *penal* legislation." *State v. Germane*, 971 A.2d 555, 593 (R.I. 2009) (emphasis in original) (quoting *Local 1104, International Association of Firefighters, AFL-CIO, CLC*, 745 A.2d at 788).

**1**

**The Extension of the Duration of Gibson's Duty to Register**

Gibson first contends that, in extending his duty to register beyond the period set forth in the 1996 version of the Registration Act, the state has imposed an increased retroactive punishment in violation of the *ex post facto* clause. Gibson reasons that, in 1993, when the offense that precipitated his 1994 conviction for second-degree child molestation sexual assault occurred, he had a duty to register in accordance with the since-repealed § 11-37-16. As discussed above, in 1996, however, his duty to register—preserved by the savings clause set forth in § 11-37.1-18—became governed by the Registration Act, chapter 37.1 of title 11. Under the Registration Act, as it was constituted in 1996, the duty to register for an offender like Gibson was limited to "ten (10) years subsequent to the date of conviction * * *." *See* P.L. 1996, ch. 104, § 1. Gibson argues that the duration of his duty to register became fixed as of that time, meaning that his duty to register expired in 2004, ten years from the date of his conviction. Thus, Gibson reasons that, in 1997, when the General Assembly extended the duty to register to "ten (10) years subsequent to the date of release from confinement or placement on parole, supervised release or probation[,]" and again in 2003 to "ten (10) years, from the expiration of sentence for the offense[,]" it impermissibly increased a punishment—the duty to register— annexed to his original crime of second-degree child molestation sexual assault. According to

1214-15 (R.I. 1991)); *see also Calder v. Bull*, 3 U.S. 386, 390-91 (1798).

Gibson focuses on the third category: he alleges an increase in punishment from the one initially annexed to the sex offense of 1993.

Gibson, because his duty to register should have expired in 2004, his convictions for failing to notify in 2007, 2009, and 2010 are unconstitutional because they violate the *ex post facto* clause.

Under our caselaw, however, Gibson's argument that the duration of his duty to register amounted to an unconstitutional extension of his punishment does not pass muster. There is a distinction between the imposition of a duty to register as a sex offender, which we have held to be a civil, nonpunitive regulatory measure, and the criminal offense of failing to register or notify. As this Court explained in *Germane*, "[a]though it follows as a consequence of a criminal conviction, sexual offender registration and notification is a *civil* regulatory process." *Germane*, 971 A.2d at 593. In *Germane*, we held that the retroactive imposition of the duty to register did not implicate "the Rhode Island *ex post facto* clause because the registration requirement is simply part of a nonpunitive, civil regulatory scheme." *Id.* The United States Supreme Court has held likewise with respect to the federal *ex post facto* clause. *See Smith v. Doe I*, 538 U.S. 84, 105-06 (holding that Alaska's sex-offender registration act, modeled after Megan's Law, was "nonpunitive, and its retroactive application [did] not violate the *Ex Post Facto* Clause"). Thus, the duty to register and the civil, nonpunitive regulatory conditions attached to that duty did not implicate the *ex post facto* clause's prohibition on retroactive penal legislation in *Germane*.

In our opinion, we face precisely the same situation here. Gibson's core contention is that the combination of changes to the Registration Act transformed his requirement to register from a civil regulation to a criminal punishment. The duration of his duty to register went from (arguably) a lifetime, under the former § 11-37-16, to 2004 (ten years from the date of his conviction) under the 1996 Registration Act, to 2009 (ten years from his release or the beginning of his parole, supervised release or probation) under the 1997 amendment, and to 2019 (ten years from the expiration of his fifteen-year sentence, imposed in 1994) under the 2003 amendment.

However, it is our firm opinion that the *ex post facto* clause is not implicated here because the duration of his duty to register is merely a condition attached to a civil, nonpunitive regulatory measure. *See Germane*, 971 A.2d at 593. The extension of his obligation to register from 1996 onward is the product of the General Assembly's fine-tuning a civil regulatory scheme, not the imposition of retroactive punishment. As the United States Supreme Court has noted, the federal *ex post facto* clause "does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." *Doe I*, 538 U.S. at 103-04. We conclude that the same is true of the Rhode Island *ex post facto* clause; the extension of the expiration of Gibson's duty to register from 2004 to 2019 does not transform a civil, nonpunitive regulatory requirement into retroactive penal legislation. *See id.*; *Germane*, 971 A.2d at 593.

Our opinion on this issue gains support from the "intent-effects" test that the United States Supreme Court has applied in determining whether sex-offender registration and notification requirements implicate the *ex post facto* clause. Under this test, a court first "must ascertain whether the legislature meant the statute to establish 'civil' proceedings." *Doe I*, 538 U.S. at 92 (citation omitted). This requires us to discern the intent of the Legislature:

> "If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the State's] intention to deem it civil.'" *Id.* (citation omitted).

Furthermore, "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997)).

This Court previously has explained that the overall purpose of the Registration Act is civil and nonpunitive:

> "It is evident that the purpose of the Registration Act is not to punish the offending [individual], but rather to protect the safety and general welfare of the public. Supplying the names and addresses of sex offenders to law enforcement agencies enables the agencies to deal more successfully with the serious problem of recidivist sex offenders. * * * [T]he proceeding remains rehabilitative, rather than punitive * * *." *Germane*, 971 A.2d at 593 (quoting *In re Richard A.*, 946 A.2d 204, 213 (R.I. 2008)).

In our judgment, with respect to the first prong of the "intent-effects" test, *see Doe I*, 538 U.S. at 92-93, the intent behind the specific amendments extending Gibson's duty to register was similarly civil and nonpunitive. *See Germane*, 971 A.2d at 593. In extending the duration of the duty to register by amendment in 1997 and 2003, the General Assembly intended not to impose punishment, but merely to further the civil, nonpunitive sex-offender registration and notification scheme. As we concluded in *Germane*, we are of the opinion that this was done in furtherance of "protect[ing] the safety and general welfare of the public[,]" not for the purpose of imposing further punishment on Gibson. *Id.* (quoting *In re Richard A.*, 946 A.2d at 213).

Having concluded that the General Assembly's intent was nonpunitive, we turn next to the "effects" part of the analysis; that is, "whether the statutory scheme is 'so punitive either in purpose or effect as to negate [the General Assembly's] intention to deem it civil.'" *See Doe I*, 538 U.S. at 92. The United States Supreme Court has identified seven factors that serve as "useful guideposts" in analyzing whether the effects of a law are sufficiently punitive to overcome a legislature's nonpunitive intent. *Id.* at 97 (quoting *Hudson*, 522 U.S. at 99). Known as the "*Mendoza-Martinez* factors," they are: whether the law (1) "has been regarded in our history and traditions as a punishment"; (2) "imposes an affirmative disability or restraint"; (3) "promotes the traditional aims of punishment"; (4) "has a rational connection to a nonpunitive

- 23 -

purpose"; (5) "is excessive with respect to this purpose"; (6) "comes into play on a finding of scienter"; and (7) "whether the behavior to which it applies is already a crime[.]" *Id.* at 97, 105. Accordingly, our analysis must be whether, after applying those factors, the General Assembly's extension of Gibson's duty to register evidences a punitive effect or purpose so onerous as to negate its intent to enact a civil, nonpunitive statutory scheme. *See id.* at 92, 97.

It is our considered opinion that the *Mendoza-Martinez* factors do not militate in Gibson's favor. Since we first addressed this issue in 2008, we have considered the registration requirement itself to be nonpunitive. *See In re Richard A.*, 946 A.2d at 213. We are not persuaded that the extension of the duration of Gibson's registration requirement by amendments to the Registration Act in 1997 and 2003 strays from that historically nonpunitive intent. Furthermore, the *duration* of the duty to register neither "imposes an affirmative disability or restraint" on Gibson nor does it "promote[] the traditional aims of punishment." *See Doe I*, 538 U.S. at 97. In addition, of particular import, extending the duty to register is not so excessive as to stray from the requirement's purposes, which are to curb recidivism and protect the public. *See id.*; *Germane*, 971 A.2d at 593. Finally, the last two factors are of no significance here; there is no issue of scienter, and it is well settled that the registration requirement and the duration attached thereto flow from the commission of a criminal, sexual offense. *See Doe I*, 538 U.S. at 105. Therefore, there is no punitive effect as applied to Gibson, nor were the amendments in furtherance of a punitive purpose. Gibson's argument that those amendments violate the *ex post facto* clause of either the federal or state constitutions must therefore fail.

We do pause to note, however, that although Gibson's constitutional right against the passage of *ex post facto* laws has not been violated by the amendments that have been enacted to date, this does not foreclose the possibility that there is some threshold that the General

- 24 -

Assembly could someday cross that might lead to a different conclusion. In fact, the New Hampshire Supreme Court recently held that its state's sex-offender registration act was so punitive in its effects on an offender that it negated the civil, nonpunitive purpose of the legislation. In *Doe v. State*, 111 A.3d 1077 (N.H. 2015), that court applied the "intent-effects" test to several changes in New Hampshire's onerous sex-offender registration and notification statute. *Doe*, 111 A.3d at 1093-1100. While "[n]o one amendment or provision [was] determinative, * * * the aggregate effects of the statute" compelled the court to hold that the statute "ha[d] a punitive effect as applied to the [offender]." *Id.* at 1100. The court emphasized that two requirements of the statute were particularly punitive: the lifetime registration requirement and the requirement that the offender register in person. *Id.* at 1094, 1096, 1100.

We are satisfied that the extended duration of Gibson's duty to register pales in comparison with the situation that was held to be constitutionally deficient in *Doe*. First, in contrast to the history of Gibson's duty to register, the first iteration of New Hampshire's registration statute was passed four years *after* the *Doe* offender's probation ended. *Doe*, 111 A.3d at 1082. Further, Gibson, unlike the offender in *Doe*, has not been subjected to a cascading effect of onerous registration requirements. For example, it was significant to the New Hampshire Supreme Court that the offender there, unlike Gibson, was required to register in person four times per year, a requirement that he had no opportunity to alleviate under the registration statute. *Id.* at 1094-95, 1096. Also, contrary to Gibson's present scenario, the law in New Hampshire imposed on the offender a lifetime duty to register, a duration that the court considered particularly excessive in light of the fact that the offender had not reoffended. *See id.* at 1100. While Gibson, too, has not reoffended, he does not, in our opinion, have a lifetime duty to register. Moreover, the offender in *Doe* suffered from a serious permanent disability,

- 25 -

furthering the court's conclusion that the more onerous changes to the registration statute had constrained his ability to change addresses. *Id.* at 1082.

Those facts, when churned through the "intent-effects" analytical framework, weigh far more heavily in the *Doe* offender's favor than they do in Gibson's. This is especially true because we do not believe that the extension of Gibson's duty to register is excessive in relation to the nonpunitive purpose underlying the 1997 and 2003 amendments. *See Doe*, 111 A.3d at 1100 (stating that "[a] number of courts give greatest weight" to the factor that asks whether the law "appears excessive in relation to the alternative purpose assigned" (citations omitted)). Gibson is not subject to a lifetime duty to register, nor must he register in person multiple times per year. *See id.* at 1100. We conclude that the extension of Gibson's duty to register is an example of the General Assembly's modification of the civil, nonpunitive regulatory requirements of the Registration Act, and nothing more.

**2**

**The Penalty for Failure to Register or Notify: From a Misdemeanor to a Felony**

Gibson also argues that the General Assembly's enhancement of the punishment for failing to notify from a misdemeanor to a felony violates the *ex post facto* clause. Again, we disagree. It is true that in 1993, when the offense that precipitated his 1994 conviction for second-degree child molestation sexual assault occurred, the failure to register as a sex offender or notify local law enforcement was a misdemeanor, punishable by ninety days in jail and one year probation. *See* P.L. 1992, ch. 196, § 1. It is also true that, in 1996, the failure to register or notify became a felony, punishable by up to two years in jail and fines of up to $2,000, *see* P.L. 1996, ch. 104, § 1, penalties which were increased in 2003 when the sentence for failing to

register or notify became up to ten years in jail and fines of up to $10,000. *See* § 11-37.1-10(a); P.L. 2003, ch. 162, § 1; P.L. 2003, ch. 170, § 1.

However, what Gibson's argument overlooks is that at the times when he failed to notify in multiple years, leading to his convictions in 2007, 2009, and 2010, the punishment for that crime already was in full force and effect. *See* §§ 11-37.1-9, 11-37.1-10(a); P.L. 2003, ch. 162, § 1; P.L. 2003, ch. 170, § 1. Furthermore, his failures to notify were offenses separate and apart from the second-degree child molestation sexual assault of 1993, rendering them insufficiently annexed to that crime as to trigger a violation of the *ex post facto* clause. *See State v. Pelz*, 765 A.2d 824, 830-31 (R.I. 2001). Therefore, there has been no retroactive punishment and no *ex post facto* violation. *See Pereira*, 973 A.2d at 32. Accordingly, as applied to Gibson, the amended statutory framework does not violate the *ex post facto* clause.

**IV**

**Conclusion**

For the reasons set forth above, we affirm in part and quash in part the decision of the magistrate on the motion to dismiss. We affirm that part of the decision denying the motion to dismiss, but reverse the magistrate's ruling that Gibson has a lifetime duty to register as a sex offender. With respect to the application for postconviction relief, we affirm the judgment denying relief, but reverse the hearing justice's ruling that Gibson's obligation to register is for the remainder of his life.[18] The papers in this case are remanded to the Superior Court for further proceedings not inconsistent with this opinion.

---

[18] We note that the hearing justice who denied Gibson's application for postconviction relief concluded that Gibson's duty to register, if not a lifetime in length, will expire in November 2030. She reached that conclusion based upon her interpretation of a 2008 amendment to a provision of the definitional section of chapter 37.1 by the General Assembly. *See* § 11-37.1-2(e)(8) (defining the term "[c]riminal offense against a victim who is a minor" to include "[a]ny violation of § 11-37.1-10"); P.L. 2008, ch. 155, § 1; P.L. 2008, ch. 202, § 1; *see also* § 11-37.1-

10(a) ("Any person who is required to register or verify his or her address or give notice of a change of address or residence who knowingly fails to do so shall be guilty of a felony and, upon conviction, be imprisoned not more than ten (10) years, or fined not more than ten thousand dollars ($10,000), or both."). We leave that issue for another day.

**SUPREME COURT – CLERK'S OFFICE**

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | State v. Frederick Gibson.<br><br>Frederick Gibson v. State of Rhode Island. |
| **Case Number** | No. 2015-108-M.P.<br>(P2/12-2199A)<br><br>No. 2016-149-Appeal.<br>No. 2017-317-M.P.<br>(PM 14-4730) |
| **Date Opinion Filed** | April 23, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, J. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Magistrate John F. McBurney III<br><br>Associate Justice Kristin E. Rodgers |
| **Attorney(s) on Appeal** | For State:<br><br>Aaron L. Weisman<br>Department of Attorney General<br><br>For Petitioner/Defendant:<br><br>Susan B. Iannitelli, Esq. |